1830.
Burrall
v.
Jewett.

---

## BURRALL vs. JEWETT.

If the specification annexed to a patent is sufficiently explicit to enable a skilful mechanist without any other aid to construct the patent invention the patent will not be void although some of the minor details of the machine should not be set forth at large.

But the patent is void if the machine will not answer the purpose for which it was intended without some addition, adjustment or alteration which had not been discovered or invented at the time the patent was issued.

Where a patent is granted for an improvement in machinery, a drawing of the improvement as well as a specification is required.

The drawing may be referred to for the purpose of aiding a specification, which otherwise would be imperfect.

It may also be referred to as evidence to show that the machine claimed under the patent is not the one for which the patent issued.

The circuit court of the United States alone has jurisdiction of suits to recover damages for the infringement of patent rights.

The judicial power of the U. States extends to all cases arrising under the constitution and laws of the general government; but the federal courts can only exercise judicial power in cases in which it has been delegated to them by the laws of congress.

The act of the 15th of February, 1819, extended the jurisdiction of the circuit courts of the United States to suits both at law and in equity arising under the patent laws; but it does not render the jurisdiction of those courts exclusive in such cases.

Where an assignee of a patent right sold the same, and at the time of the sale exhibited a machine as the one which he then supposed to have been patented, but which afterwards was discovered to be different from the one actually patented, as described in the specification, the deed of assignment and a note given for the purchase money, and an accompanying agreement in relation to the sale of the patent right, were ordered to be delivered up

and cancelled; the whole transaction having been founded upon a mistake as to a matter of fact. It was also held that the vendee was not entitled to the damages which he had sustained in consequence of such purchase; but that if any part of the purchase money had been paid, he would have been entitled to have the same refunded.

THE bill in this cause was filed in 1826. It stated, among other things, that in March, 1823, the defendant, for the consideration of $500, sold to the complainant the exclusive right and liberty of making, using and vending "Ballou's patent improved threshing and winnowing machine," for the counties of Ontario and Yates; and that the defendant in the assignment covenanted that he had authority to convey such exclusive right; and warranted the same right to the complainant, his heirs and assigns, for the term of 14 years from the date of the patent, which was granted to Seth Ballou in December, 1821. The bill further stated that by a further agreement made at the time of the sale, the complainant was to hold one half of the right for his own use and profit, and one half for the use and profit of the defendant; for which the complainant was to account to him, reserving 25 per cent. of the profits for his services; that at the time of the sale and agreement the defendant had in his possession and exhibited a machine, which he alleged was constructed according to the specification in Seth Ballou's patent, and was a model by which the machine sold could be made; that relying upon the truth of the defendant's representation, he (the complainant) was induced to make the purchase and agreement; and he thereupon gave his note to the defendant for the consideration money, payable in five years with interest annually from the 1st of August, 1823. The bill further stated that the complainant, after such purchase, discovered that the representations made by the defendant in relation to the machine were false and deceptive; and the complainant charged in his said bill that the same were made with the intention of deceiving and defrauding him; that he procured from the city of Washington an exemplification of the specification annexed to Seth Ballou's patent, and ascertained that the machine exhibited and sold to him by the defendant as Ballou's patented machine, was

1830.

Burrall
v.
Jewett.

April 6th.

1830.

Burrall
v.
Jewett.

entirely different in construction and operation from the one which was patented to Ballou, as described in the said specification; that he (the complainant) purchased the right and made the agreement under the full belief that he was acquiring the exclusive right to make, use and vend a valuable and patented improvement in the machine for threshing, &c. and with the expectation of profits which would arise from the re-sale of the right to make and use the same. The complainant also charged in his bill that the defendant at the time of the sale had in his possession a copy of the specification of Ballou's patent, and knew that it did not describe a valuable improvement, and knew that the machine exhibited to the complainant was not constructed according to, nor protected by the said specification and patent; that the complainant, before he ascertained the machine was not covered by the patent and specification, had expended money, time and labor in preparing materials and making machines which he was obliged afterwards to sell at cost, without receiving any compensation for his labor and services. The bill further stated that the defendant had been requested to deliver up the note and agreement to be cancelled, and to account with the complainant for his damages; which was the particular prayer of the bill. The bill also contained a prayer for general relief.

The defendant in his answer admitted the sale and agreement as mentioned in the bill. He all stated that in October, 1822, P. Garcelon, the assignee of Ballou's patent, came to his residence in Saratoga county and exhibited a model of the machine, and offered the same for sale; and that he constructed a machine after such model, which the defendant considered a valuable improvement; that he, the defendant, thereupon purchased of Garcelon the right for the counties in the eastern and western senatorial districts, excepting three or four counties in the then eastern district; that he, the defendant, after such purchase, constructed two machines similar to the one made by Garcelon, and agreeably to the directions given by him; one of which was the machine shown to the complainant, and which the complainant saw several times in operation. But the defendant de-

nied that he represented to the complainant that the machine was constructed according to the specification and description of Ballou's patent improved threshing and winnowing machine; that he had with him Garcelon's printed directions for constructing the machines, by which he told the complainant the machine there exhibited had been constructed; which printed directions he, the defendant, left with the complainant. The defendant further stated in his answer, that he had not at that time seen the specification upon which the patent issued, nor did he then inform the complainant that he had such specification; that Garcelon did not exhibit the specification at the time the defendant purchased from him, but he promised to send to the defendant a copy of the same, which he had never done. The defendant denied that he represented to the complainant that the machine was an original invention, although he at the time thought and still believed it was so, and he also believed that the patent was good and valid. That he, the defendant, exhibited to and left with the complainant a printed copy of the patent without the specification, and gave to him all the information he possessed in relation to the machine and the right to the same; but the defendant denied that he made any misrepresentation to the complainant, or that he intentionally concealed any thing from him in relation thereto. And the defendant in his answer insisted that the machine exhibited to the complainant was covered and protected by the patent; and that the complainant by his purchase acquired the exclusive right to make, vend and use the same for the counties of Ontario and Yates. The defendant also stated in his answer that he had understood and believed that the complainant had, from the machine sold to him by the defendant, constructed a machine for threshing and cleaning clover seed, which was an infringement of Ballou's patent; that the complainant had obtained a patent for such clover machine, and had made considerable profit by the sale of the right to the same; and that the complainant was attempting to invalidate the patent for the threshing machine, to prevent its being brought in collision with his clover machine. The defendant also insisted that the matters of the complainant's

1830.

Burrall
v.
Jewett.

1830.

Burrall
v.
Jewett.

bill were not such as entitled him to any relief in this court; and he prayed for the benefit of the objection in like manner as if he had demurred to the bill or pleaded the said matter in bar of the suit. A general replication was filed to the answer of the defendant, and several witnesses were examined on both sides. The cause was heard upon pleadings and proofs.

*B. F. Butler & C. Butler,* for the complainant. The complainant was fraudulently drawn into the contract which he now seeks to avoid. The defendant soon after the sale, if not before, knew that the patent and specification did not cover the machine exhibited. If there was no intentional deception on the part of the defendant, yet the sale is void because the machine sold was not patented. Although the complainant might have sued at law for the breach of the contract, yet he is liable to a suit on the note; and there being either fraud or mistake in this case, he may apply in the first instance in equity to have the contract, note, and agreement set aside. Notwithstanding the validity of patents is only triable in the federal courts, yet this court has jurisdiction in cases of fraud for selling, for any particular district, a machine as patented which is not so. The complainant is entitled to the relief specifically prayed for in his bill, and which can only be granted by a court of equity; that is, to have the whole transaction set aside, and to recover all the damages sustained by him in consequence thereof. The counsel cited 1 Mad. Ch. Rep. 262; *Rosevelt* v. *Fulton,* (2 Cowen's R. 132;) *Bacon* v. *Bronson,* (7 John. Ch. R. 200;) *Rathbone* v. *Warren,* (10 John. R. 587;) *King* v. *Baldwin,* 17 id. 384;) *Langdon* v. *Degroot,* (1 Paine's R. 203;) *Lowell* v. *Lewis,* (1 Mason's Rep. 182;) *Barrett* v. *Stearns,* (1 id. 447;) *Woodcock* v. *Parker,* (1 Gallison's Rep. 439;) *Whittemore* v. *Cuttler,* (1 id. 478;) *Ordion* v. *Winkley,* (2 id. 51;) *Evans* v. *Evans,* (1 Peter's C. C. R. 323; 3 Wheaton's R. 354, S. C.;) *Sullivan* v. *Redfield,* (1 Paine's Rep. 451;) Fessenden on Patents; 130, 178; *Gray* v. *James,* 1 Peter's C. C. Rep. 394;) *Hayne* v. *Maltby,* (3 T. R. 438;) *Bellas* v. *Hays,* (5 Serg. & Rawle, 427;) *Tyler* v. *Tuel,* (6

1830.

Burrall
v.
Jewett.

Cranch's Rep. 324 ;) Fessenden on Patents, 233 ; *Whitte-more* v. *Cutler,* (1 Gallison's Rep. 429 ;) *Parsons* v. *Barnard,* (7 John. R. 144.)

*H. Bleecker & J. Thompson,* for the defendant. The specification upon which the patent was issued is sufficient. If not sufficient, it is manifest that the deficit did not proceed from any intention to deceive the public, and therefore does not avoid the patent. The defendant is entirely innocent of the charge of fraud. He communicated to the complainant every thing he knew about the patent. The purchase of the patent right by the complainant has been or might have been valuable to him ; and his remedy, if any, is at law. This court cannot interfere. The patent has not been avoided according to the laws of the United States. Until this is done, a want of consideration cannot be shewn by the complainant. This court cannot try the validity of a patent. The counsel cited Fessenden's Law of patents, 174 ; 306, 317, 346, 370, 386 ; 388, 2d ed. ; *Sullivan* v. *Redfield,* (1 Paine's R. 450 ;) *Whittemore* v. *Cutler,* (1 Gallison's R. 429 ;) *Lowell* v. *Lewis,* (1 Mason's R. 189 ;) Collection of Patent Cases, 307 ; *Chesterman* v. *Gardner,* (5 John. Ch. R. 32 ;) *Kempshall* v. *Stone,* (5 id. 193 ;) *Abbot* v. *Allen,*) 2 id. 519 ;) *Hatch* v. *Caleb,* (4 id. 559 ;) *Parsons* v. *Barnard,* (7 John. R. 144.)

THE CHANCELLOR. This suit cannot be sustained on the ground assumed in the first point of the complainant. The charge of fraudulent misrepresentation and concealment is fully denied in the answer ; and there is nothing in the proofs in the case to induce the court to believe the answer in this respect is not strictly true. The testimony of Jones is calculated to support this part of the answer rather than to impeach it. The rights were sold early in the spring, and some time in the summer thereafter the defendant showed the specification he had subsequently obtained from Washington to Jones, who then explained to him the defects therein. This appears to have been the first intimation or suspicion Jewett had that the machines made and exhibited by him did not agree therewith. Jones says the defendant finally assented

to the correctness of his assertions, that the machine was not constructed according to that specification ; but requested him not to mention it to the complainant. This concealment of a fact discovered long after the agreement and sale, could not make the original transaction fraudulent. If the patent is invalid for want of a proper specification, I am satisfied the defendant did not suspect it at the time of the sale. I shall therefore proceed to examine whether the machine which both parties supposed was patented to Ballou, was in fact covered and protected from infringement under the patent of December, 1821 ; and if it is not thus covered and protected, whether the complainant is entitled to the specific relief prayed for in his bill, or to any other relief in this court against the defendant.

On looking into this case, soon after the argument, I became satisfied it was important to a correct understanding of the subject that the court should be furnished with copies of the patent, and of the petition, specification and drawings upon which the same was granted. I therefore suspended the decision of the cause for thirty days, to give either party that might think proper to do so, an opportunity to procure the exemplifications from the patent office, and to file them with the register. And I also gave permission to either party, after those exemplifications were produced, to apply for the further examination of witnesses, in connexion with the exemplifications, if the should think it necessary. The exemplifications were accordingly produced by the defendant, and neither party has asked for leave to take any further testimony. And it is probable no testimony could have been produced which would have altered the result. The whole of the petition is recited in the patent ; and the drawing corresponds with the specification which was exhibited to the witnesses on their examination.

The petition stated that Seth Ballou of Livermore, in the county of Oxford and state of Maine, the petitioner, had invented, constructed and applied to use a new and useful improvement in threshing, sifting and winnowing wheat, rye, oats, and all kinds of small grain ; also grass, flax, and all other articles from which the seed might be obtained by thresh-

1830.

Burrall
v.
Jewett.

ing by machinery, at one operation; the machine being called Ballou's threshing machine, constructed agreeably to the accompanying specification. In the specification, that part of the machine which is the subject of controversy is thus described: "Upon a frame fitted for supporting the machine, there is a large wheel, of any convenient dimensions, say $4\frac{1}{2}$ feet diameter, to the centre of which a crank is affixed for the purpose of turning it by hand. A band passes around this wheel, and also around a whurr or small wheel, say 8 inches in diameter, which is affixed to a large cylinder, say 2 feet in diameter and 2 feet 8 inches in length, or it may be larger or smaller according to the dimensions of the whole machine. This band is to give motion to the cylinder. In this cylinder are put four or any convenient number of rows of cogs, equally distant from each other. The cogs in each row occupy one half the space in the length of the cylinder; that is, a space is left between each, equal to that occupied by a cog. These cogs are an inch and an half in diameter and two inches in length, or they may be larger or smaller with equal effect. Care however must be taken to place those of the second row so as to follow the spaces in the first row; and in the same manner all the other rows, be they more or less. The office of these cogs is to beat the grain from the straw. Directly over this cylinder, or, which is preferred, about eight inches upon the surface from the top, down the side of the cylinder, a hopper or feeder is placed within a short distance, say half an inch, of the cogs, with a narrow opening at the bottom sufficient for the admission to the cylinder of the article to be threshed; which opening may be gauged to any convenient space. Around the under half and fore part of the cylinder there is a casting which is called the barrel, placed within half an inch of the cogs. Immediately in rear of the cylinder are flyers, constructed as follows," &c. The manner in which the operation is performed is thus described in the specifiation: "The machine being put in motion, the grain or substance to be threshed is to be put into the hopper or feeder, and immediately comes in contact with the cogged cylinder, and is thus thoroughly and completely beaten from the straw. The

whole passes under the cylinder, is then taken by the flyers and thrown back upon the sieve, through which the grain passes," &c.

At the time of the sale to the defendant, by Garcelon, and of the sale by the former to the compainant, printed copies of the original patent, without the specification, were exhibited; at the bottom of which was also printed, "For the schedule and improvement, see machine and directions." The printed directions, which were also produced and shewn at the same time, corresponded with the machines then exhibited. The cylinder and apron or barrel were constructed thus: In the cylinder there were six rows of teeth projecting nearly two inches therefrom, and so set that the teeth in every row would, in the revolutions of the cylinder, follow some of those in the first row and pass between corresponding teeth placed in the apron or barrel; so that in passing between each other, the teeth in the revolving cylinder and those in the apron or barrel were three sixteenths of an inch apart. On the part of the defendant, it is insisted that this is the manner in which the machine is to be constructed by the specification, and that every alternate row of cogs should be inserted in the apron or barrel; and some witnesses have been made to say this is the way a skilful machanic would make the machine from the specification. It is undoubtedly a correct rule in relation to patents that if the specification is sufficiently explicit in its details to enable a skilful mechanist to construct the patented improvement or invention, without any other aid, it is not to be considered void because some of the minor details of the machine are not set forth at large. As in the case, the revolving cylinder is to be put in motion by means of a whurr on one end of the gudgeon, and by a large wheel turned with a crank. If the patentee, through inadvertence, and without any intention to deceive the public, had neglected to mention that a band was to pass around the whurr and the large wheel, the specification would have been sufficient; that being the common and well known mode of performing the operation, which any person acquainted with machinery would at once supply. (*Gray* v. *James*, 1 *Peters' C. C. R.* 394. *Crossley* v. *Beverly*, 3 *Car. & Payne*, 513.) But the

1830.

Burrall
v.
Jewett·

patent is void if the machine will not answer the purpose for which it was intended, without some addition, adjustment, or alteration, which the mechanic who is to construct it must introduce of his own invention; and which had not been discovered or invented by the patentee at the time his patent was issued.

In this case, there is sufficient evidence that the placing of cogs or teeth in the apron or barrel, in addition to those in the revolving cylinder, was in use at the time the defendant purchased of Gracelon, and previous thereto. But there is no evidence that the patentee had made that improvement, or discovery at the time his patent issued.

The patent law of the United States requires a drawing as well as a specification in cases of machinery; and the drawing may be referred to for the purpose of aiding a specification which would otherwise be imperfect. (*Bloxam* v. *Elsee*, 1 Car. & Payne's Rep. 558. *Earle* v. *Sawyer*, 4 Mason's R. 1.) As the drawings may be referred to for the purpose of aiding the written specification, to support the patent, it seems to follow that it may be resorted to by the adverse party to explain any thing which is doubtful or ambiguous in the written description; or for the purpose of shewing that the machine in question is not the same as that for which the patent was obtained. The written description says that, in the cylinder, there are to be put four or any convenient number of cogs, equally distant from each other, and in size equal to the distance between them. Nothing is said of any cogs or teeth in the barrel or apron. But it is contended on the part of the defendant that each alternate row of cogs is to be inserted there, as the machine would be useless without them. On examination of the drawing, there are two rows of cogs exhibited on the cylinder, so placed as to require two more rows thereon to make them equidistant, as stated in the specification; and there is nothing in the drawing to show that any corresponding cogs or teeth are to be inserted in the barrel. Indeed, if the cogs in the cylinder are inserted as directed in the specification it would be impossible for it to revolve on its axis if similar cogs were also inserted in the barrel. The spaces between the cogs being equal to the size of

a cog, and those of the second row being placed so as to fill the spaces between those in the first, would occupy the whole length of the cylinder, and would necessarily strike against and be stopped by the cogs inserted in the barrel. If the witnesses could make a valuable threshing machine from this specification, similar to the one actually sold, it must be by their own ingenuity and invention, and by going directly contrary to the directions therein contained. The court cannot be governed by the opinions of witnesses, however intelligent and respectible they may be, when those opinions are contradicted by the facts which are indisputable. I am therefore compelled to decide that the machine sold by Gracelon to the defendant, and by the latter to Burrall, is not the same machine described in the petition and other papers on which the patent to Ballou was granted. It is satisfactory also for me to know that the conclusion at which I have arrived corresponds with the decision which my learned predecessor was prepared to make, if the parties had consented to have that decision entered nunc pro tunc after he had resigned the office of chancellor. There is no evidence from which I have been able to form a satisfactory opinion whether the machine, in its present perfect and useful form, was the one for which the patent was intended to be taken out. But as it differs so materially from the specification and drawings, which hardly could have been the effect of accident, and from the expression at the foot of the printed copy of the patent, " For the schedule and improvement, see machine," I am inclined to the opinion that the insertion of teeth in both the barrel and cylinder, instead of cogs in the latter only, was an improvement upon the original machine, made after the papers were prepared, in September, 1821. If such was the case, this important and valuable improvement of the original machine should have been secured by a new patent for the same. In the absence of that, there is no evidence that the patentee was the original inventor of that improvement. His oath only extends to the machine described in his specification and drawings.

Much was said on the argument to show that Burrall's clover machine did not vary in principle from the machine

purchased of Jewett, which was also intended to be used for the same purpose. But is not necessary for the decision of this cause to enquire as to the validity of Burrall's patent. If his machine does not differ in principle from the other, but merely in its proportions, the patent is void. If he has made a material and useful improvement on the original machine, he is entitled to a patent for that improvement only. He has no right to use an original patented machine in connexion with such improvements, without the consent of the owner.

An objection has been made to the jurisdiction of this court on the ground that the federal courts alone have the power to pronounce upon the validity of a patent. Where a suit is brought to recover damages for the infringement of a patent right, the defendant is entitled to set up the invalidity of the patent as a defence to the action; and if he succeeds in establishing such defence, the court is to give judgment for the defendant, and to declare the patent void. An action of this description must therefore be brought in the circuit court of the United States, which alone has jurisdiction to give the proper remedy to either party. (7 John. R. 144.) The fifth section of the patent law of 1793 authorized the action for damages for the infringement of a patent to be brought in the circuit courts of the United States, or in any other court having competent jurisdiction. This, however, was found to be inconsistent with the power to declare the patent void conferred by the sixth section; and in the act of April, 1800, the fifth section of the former law was repealed and another one substituted, giving jurisdiction in such a case to the circuit court only. (Laws of United States, vol. 5, p. 88, § 3.)

The judicial power of the United States extends to all cases arising under the constitution and laws of the union; but the federal courts cannot exercise that judicial power except in those cases where it has been delegated to them by congress. (1 Paine, 45.) The act of the 15th February, 1819, extended the jurisdiction of the circuit courts of the United States to suits both at law and in equity arising under the patent laws; but there is nothing in that act which, either in terms or by necessary implication, renders that jurisdiction

exclusive. Under the judiciary act of 1789, where it was intended to give exclusive jurisdiction to the federal courts, it is so stated in express terms.

The remaining question is, to what relief is the complainant entitled on the facts disclosed in the pleadings and proofs? No recovery can be had upon the warranty contained in the deed of assignment of the 10th of March, 1823. That was an assignment of the machine patented to Seth Ballou in December, 1821. The right to that machine actually passed by the assignment, and was protected by the patent. But it was materially different from the machine exhibited, which both parties then supposed was patented, which was the real object of sale and purchase. The real subject of sale is not warranted by that deed, and no recovery can be had thereon for the defect of title to the patent right intended to be sold and conveyed thereby. In *Bliss* v. *Negus*, (8 Mass. R. 46,) a promissory note had been given upon an assignment from a prior assignee of certain rights in a patent. Upon the trial, it appeared that the original patent was void; but there was no evidence that the plaintiff was acquainted with the fact at the time he sold to the defendant. As the plaintiff lost nothing and the defendant acquired nothing by the deed of assignment, the note in that case was held to be without consideration and void. The same principle is recognized in *Hayne* v. *Maltby*, (3 T. R. 438,) and in *Ballas* v. *Hayes*, 3 Serg. & Rawle, 427.) In this case, the other agreement made at the time of the sale must be considered as part of the same contract; and the whole being founded on a mistake as to matter of fact, it would be unjust and inequitable to compel the complainant to carry the contract into effect. The note, deed of assignment, and the accompanying agreement in relation to the sale of patent rights, must be delivered up and cancelled. But the complainant is not entitled to recover any damage which he may have sustained in making machines. All the witnesses agree that the machine was valuable in itself. Independent of any exclusive right, with ordinary care and diligence it would sell to farmers for enough to pay the expenses of constructing it; together with a reasonable profit to the mechanist. The only loss, from the

mistake of the parties as to the real state of the case, therefore appears to be the increased price which might have been expected as a compensation for the supposed exclusive right. Even if actual damage has been sustained, I know of no principle of law which can authorize one party to recover damage from another, in such a case, where neither was guilty of any fraud. If Jewett had been benefitted, or had received any thing under the agreement, there might be some ground for calling upon him to refund what he had received.

If the complainant, after he had discovered the difference between the specification and the machine purchased by him, had simply asked for a return of the note and to have the agreement cancelled, and had confined himself to that in his bill, I should have been disposed to charge the defendant with costs. But he asked for more than he was entitled to ; and by his bill in this cause has endeavored to sustain the whole of that claim by charging the defendant with a fraudulent misrepresentation and concealment. In that part of the suit he has entirely failed. I therefore think it a case in which, upon the principles of equity, each party should bear his own costs.