## RICE VS. GARNHART.   (First Case.)

PATENTS: JURISDICTION: CONTRACT CONSTRUED.   (1–3) *Jurisdiction of state courts in cases relating to patents.*   (2, 4, 7, 8) *Invalidity of patent, as a defense to action for contract price or royalty.*   (4) *Contract construed.*   (5–8) *Patent held void — Effect of disclaimer as to excess therein.*

1. It is well settled that the federal courts have exclusive jurisdiction of actions to *annul letters patent*, and actions between the owners of adversary patents to determine questions of infringement or priority.
2. But in an action brought in a state court to recover the contract price of

a patent right, the defendant, for the purpose of showing a *want* or *failure of consideration,* may prove that *the patent is void* because the patentee was not the first inventor of the patented article.

[3. Per LYON, J.  Actions for damages for making, using or selling patented articles are in the nature of *penal* actions (the court being authorized by law to give judgment for three times the amount of damages assessed by the jury); and the courts of this state will not take jurisdiction of actions to recover penalties imposed by acts of congress.  *Brigham v. Claflin,* 31 Wis., 607.]

4. Plaintiff, while his application for letters patent on a certain machine was pending, assigned one-half his interest therein to defendant, and the patent was issued to them jointly, and thereupon they agreed in writing to manufacture and sell the machine on joint account, and divide the net profits in a certain proportion, and plaintiff agreed to devote his whole time and skill to selling the machine and improving it for their joint benefit, and was to draw from the business $1,000 annually for three years, for his own use.  Nearly a year afterward the parties substituted for this written agreement another, by which defendant was to have the exclusive right to make and sell the patented machine in this and certain other states; plaintiff was to devote his whole time and skill to the sale of the machine and the improvement thereof on the joint account; defendant, "in consideration of such exclusive right," was to pay plaintiff a certain sum "as a royalty" on each machine manufactured by the former, the same "to be paid on the first day of January in each year after the manufacture of the same;" and he was to "advance the plaintiff $1,000 per year for three years from the first day of October" then next, "payable in quarterly installments of $250 each in advance,"— said quarterly advancements to be deducted from the amount of the royalties to be paid plaintiff in each year, etc.  *Held,*

  (1.) That the agreement to advance said quarterly payments was valid if the contract was otherwise valid, and the facts that such payments were to be deducted from the amount that might become due for royalties, and that no machines had ever been made, and no royalties earned, would be no defense to an action for such quarterly payment.

  (2.) That the money sued for (in an action for such quarterly payment) was *the agreed royalty* for the exclusive right to sell the patented machine; that the plaintiff's undertaking to devote his whole time and skill, etc., *pertained to the patent,* and was of no value if that was void; and that therefore, if the patent is invalid, there is a *total failure of consideration* for defendant's promises.

5. Under the laws of the U. S. (Acts of Congress, 1836, ch. 357, secs. 6, 15),

Rice vs. Garnhart.    (First Case.)

it is sufficient, for the purpose of defeating a patent, to show that the invention was "known or used by others" before it was invented or discovered by the patentee; and it is *not* necessary to show that such knowledge or use was *general*, or that it was *practical* (in distinction from merely *experimental.*)

6. If there were patentable improvements in plaintiff's invention, but a patent was obtained for more than he was entitled to, *it seems* that the patentees or their assigns, under some circumstances, may *disclaim* for the excess, and thus save the patent for such parts as are patentable. 5 U. S. Stats. at Large, 193.

7. But until such disclaimer, it seems that the patent is *wholly void*, and plaintiff cannot recover any sum agreed to be paid *as royalty* for the patent right, even though defendant manufactured the machines and used the patentable portions of plaintiff's invention.

8. What would be the effect of an offer by plaintiff to join with defendant (his co-patentee) in such a disclaimer, or of the disclaimer itself, if made, upon future installments of royalty stipulated in the agreement, is not here determined.

APPEAL from the Circuit Court for *Dane* County.

The plaintiff, having an application pending before the commissioner of patents for letters patent on a certain machine for harvesting grain, called "The Farmer's Pride," of which he claimed to be the inventor, by an instrument in writing dated September 16, 1871 (and duly recorded in the patent office at Washington September 20th of that year), assigned an undivided one-half interest in such machine and invention, to the defendant, and authorized the commissioner to issue letters patent therefor to the parties and their legal representatives. The patent was issued and bears date November 14, 1871.

The parties entered into an agreement in writing, dated September 18, 1871, in and by which they agreed, among other things, to manufacture and sell the machine on joint account, the plaintiff to have one-fourth of the net profits. The plaintiff therein agreed to devote his whole and exclusive time and skill in selling said machine and improving the same, all improvements being for the joint benefit of the parties, and he was to have the privilege of drawing from the business, for his

private expenses, $1,000 a year for three years. The business was to be carried on at Madison, in this state.

On the 8th of August, 1872, the parties entered into another written agreement (which was substituted for that of September 18, 1871), by the terms of which the defendant was to have the exclusive right to manufacture and sell the patented machine in Wisconsin, Iowa and Minnesota. The provision in the first agreement which required the plaintiff to devote his whole and exclusive time and skill to the improvement on joint account, and sale of the machines, was retained, and in place of the authority given to the plaintiff to draw $1,000 a year from the business for three years, the last agreement contains the following provisions:

"*Second.* The said *Garnhart* shall pay to the said *Rice*, in consideration of the above exclusive right, five dollars as a royalty on each machine or reaper manufactured by the said *Garnhart*, his heirs or assigns, to be paid on the first day of January in each year after the manufacture of the same.

"*Third.* The said *Garnhart* shall advance to the said *Rice* one thousand dollars per year for three years from the first day of October next, payable in quarterly installments of $250 each, in advance, and said quarterly advancements shall be deducted from the amount of the royalties to be paid to the said *Rice* in each year, if said royalties are of an amount sufficient for that purpose, and if insufficient, then to be deducted from royalties thereafter accruing. If, however, the amount of the royalties for the second year of said manufacturing shall exceed the sum of one thousand dollars, then the said one thousand dollars for the said third year shall not be so advanced."

This action is to recover the installment or payment of $250 which became due, by the terms of the agreement, on July 1, 1873. The foregoing facts appear from the pleadings and proofs in the case.

The answer denies that the plaintiff is the sole inventor of such machine, and denies that he is, or ever was, entitled to a

patent as the original inventor of the machine, or of any material part thereof. It also avers that the machine, in all its essential particulars, combinations and relative parts, had been previously invented, patented and used by others, particularly by C. W. & W. W. Marsh of Illinois; and that the patent of the plaintiff was an unlawful infringement of the rights of the Messrs. Marsh and others, and is therefore void by the laws of the United States. The answer concludes as follows:

"That in consequence of said patent being void as aforesaid, and an infringement upon the rights of other patentees as aforesaid, the said assignment to said defendant of one undivided half thereof, and the said agreement is without any consideration whatever, and the consideration of said agreement has entirely failed, and said agreement is therefore void, and said defendant has not manufactured any of said machines since the making of said agreement, and does not intend to do so, although, before he became acquainted with the facts aforesaid, he had expended a large sum of money in making preparations for the manufacture of the same, and has suffered a large amount of damages already by reason thereof.

"4th. And said defendant avers that for the reasons aforesaid, and for the further reason that the said promise to advance to the said *Rice* one thousand dollars per annum in quarterly installments of two hundred and fifty dollars each, one installment of which said plaintiff claims in this suit, is a mere naked promise to advance said money before the time fixed in said contract for the payment of the same, and without consideration and void. The defendant therefore prays that said contract and assignment be declared void and be cancelled by the proper judgment of this court, and for such other and further relief as he may be entitled to, and that he recover his costs."

The question of the validity of the patent was litigated on the trial. Testimony was offered on behalf of the defendant to show that certain results claimed to have been first accomplished by the plaintiff's harvester had been accomplished,

before his patent was issued, by another machine.    This testimony was rejected by the court.

The court was asked on behalf of the defendant to give the jury twenty-two specific instructions, all but one of which were so given.   A single instruction was given at the request of counsel for the plaintiff.   A sufficient statement of the instructions, and of the proposed testimony, will be found in the opinion.

The verdict was for the plaintiff; and the defendant appealed from the judgment entered pursuant thereto.

*Orton, Keyes & Chynoweth*, for appellant:

1. A patent which conflicts in any material parts, claimed as new, with a former patent or a previously invented and publicly used machine, is void *in toto.   Halliday v. Rheem,* 18 Pa. St., 465; 1 Gal.; 480; 1 Mason, 188; 2 id., 112; 3 Wash. C. C., 425; 3 Wheat., 454; *Davis v. Bell,* 8 N. H., 500; *Parker v. Stiles,* 5 McLean, 54; *Stanley v. Whipple,* 2 id., 35; *Smith v. Pearce,* id., 176.   The evidence showed, beyond a doubt, that the *Rice* patent, which formed the consideration of the contract sued upon, was an infringement upon the former patent of the " Marsh Harvester," and was therefore void.   This was a good defense to the action.   *Cross v. Huntly,* 13 Wend., 385; *Head v. Stevens,* 19 id., 411; *Hotchkiss v. Oliver,* 5 Denio, 318; *Burrall v. Jewett,* 2 Paige, 145; *McDougall v. Fogg,* 2 Bosw., 387; *Stevens v. Head,* 9 Vt., 174; *Nye v. Raymond,* 16 Ill., 153; 18 Wis., 441; 16 Conn., 408.   2. The instruction refused by the court was consistent with the above authorities, and with the remainder of the charge, and should have been given.   The one asked by the plaintiff, and given by the court, assumed as facts things which were not only not proved, but *against* proof; and the last instruction was contradictory of all preceding ones; and both were erroneous.   3. The prior use of an invention, to invalidate a subsequent patent to another party, need not be *general,* but merely *public (Gaylor v. Wilder* and *Jones v. Pierce,* 1 Web. Pat. C., 122; *Baker v. Ferguson,* 1 Blatch., 407; *Car-*

*penter v. Smith*, 1 Web. Pat. C., 530 ; *Sleud v. Williams*, 2 id., 126 ; *Slead v. Anderson*, id., 147 ; Curtis on Patents, §§ 88–94, and note; Hindmarch on Patents, §§ 108–112; *Seymour v. Osborne*, 11 Wall., 516); and the evidence offered by defendant to prove such use was proper and relevant. 4. No machines have yet been manufactured under the contract, and therefore nothing is due upon it. The agreement by defendant to *advance* $1,000 per year toward *anticipated* royalties was without consideration and void. Yelverton, 18; Story on Con., §§ 480, 483; 2 Black. Com., 2–10 ; 1 Saunders, 204, and notes; 1 Mees. & W., 747; 5 id., 501; 3 Term, 438; 1 Dallas, 17, and note; 11 Wend., 106; 13 Serg. & Rawle, 240; 26 Eng. L. & Eq., 27; 28 id., 27; 2 Campb., 327; 5 Pick., 528; 5 Mees. & Welsb., 501; 2 Bing. N. C., 735; 4 id., 660; 5 Blackf., 125; 16 Vt., 220; 5 Cranch, 142.

*Vilas & Bryant*, for respondent :

1. The invalidity of the patent cannot be set up as a defense to this action, because a state court has no power, under the constitution, to adjudicate that question. *Page v. Dickerson*, 28 Wis., 694; *Brigham v. Claflin*, 31 id., 607. All of the cases apparently opposed to this view may be classed as those which claim for the state courts a right to adjudicate upon patents concurrently with the federal courts (*Burrall v. Jewett*, 2 Paige, 134) — a position no longer tenable; those in which the question was not raised or considered (*Head v. Stevens*, 19 Wend., 411, and the Massachusetts cases); or those in which the defense was that the patent was not *useful for any beneficial purpose*, and therefore formed no consideration for a promise to pay for it (*Page v. Dickerson, supra; Sherman v. Champlain Trans. Co.*, 31 Vt., 162). To hold thus would be no hardship upon the defendant. He is not deprived of his remedy, but only remitted to the proper tribunal in which to obtain it; and when the patent is declared void by a court of competent jurisdiction, he has his redress by action upon the implied warranty of his vendor that it was valid. KENT, Ch., in

*Livingston v. Van Ingen,* 9 Johns., 507; *Elmer v. Pennel,* 40
Me., 430; *Tomlinson v. Battel,* 3 Abb. (U. S.), 266.  2. Though
the patent be void as claiming too much, the defendant, having
acquired valuable rights by the assignment and made use of
substantial portions of the patent in the manufacture of ma-
chines, cannot defend on that ground, because he can, by join-
ing with the plaintiff in a *disclaimer,* or by obtaining a *reissue*
of the patent, protect what is new and valuable in the present
patent.  Acts of Congress, 2 Sess. 1870, ch. 230, §§ 53, 54, 60.
3. Counsel submitted that the real consideration for the con-
tract sued on was not the assignment of the patent, as hereto-
fore assumed, but the cancellation of the former agreement
between the parties and plaintiff's promise to devote his time
and skill to selling and improving the machine.  This was ade-
quate to support the substituted contract.  *Palmer v. Yager,* 20
Wis., 91; *Merriam v. Field,* 29 id., 592–8; *Kercheval v. Doty,*
31 id., 476.

LYON, J.  I.  A position maintained by counsel for the de-
fendant, which, if well taken, is fatal to the plaintiff's right to
recover, will first be noticed.  It is claimed that by the terms
of the written agreement between the parties, the royalty stip-
ulated to be paid did not become due until the first of January
after machines were manufactured, and hence, that the agree-
ment to advance quarterly payments for three years is a mere
naked promise to pay money before the time fixed in the agree-
ment for the payment thereof, and is therefore void; that (as
the defendant alleges) no machines have been manufactured
under the contract; and hence that no sum is due the plaintiff
on account of such royalty.

We think the position is not well taken.  All of the parts of
the contract must be construed together, and, if possible, effect
must be given to each part and provision thereof.  Interpreting
the written agreement by this rule, it seems quite clear that
the defendant agreed therein to pay the plaintiff a royalty on

each machine manufactured by him, and to pay on account of such royalty, without condition, $250 every three months for two years, and the same sum quarterly during another year, unless the royalty for the second year should amount to over one thousand dollars. Any sum in excess of the quarterly payments, to which the plaintiff might be entitled in either year, became payable on the 1st day of January thereafter. If no machines were manufactured under the contract, of course no such excess could have accrued; but that circumstance can not affect the right of the plaintiff to recover the stipulated quarterly payments for three years. Hence, if there was a good consideration for the defendant's promise to pay any royalty, the plaintiff is entitled to recover in this action.

II. We will next consider a position assumed by counsel for the plaintiff, which, if well taken, may be fatal to the defense. He claims that the assignment of an interest in the invention to the defendant is no part of the consideration for his agreement to pay the money sued for, but the true considerations therefor were the cancellation of the agreement of September 18, 1871, and the plaintiff's agreement to devote his time and skill to selling machines and improving the invention, which are good considerations for the defendant's promise. The argument is ingenious; still the facts remain and are indisputable, that the money sued for is the agreed royalty for the exclusive right to manufacture a patented article; that the contract was entered into in the faith that the patent was valid; and that if the same is invalid, the plaintiff had no right to sell an exclusive privilege to manufacture the machines, and the defendant obtained nothing for his promise to pay a royalty. Both of the written agreements, and the plaintiff's undertaking to devote his time and skill to the selling of machines and the improvement thereof, pertained to the patent, and were not valuable to the defendant if the patent itself was invalid for any reason. *Bliss v. Negus,* 8 Mass., 46.

If, therefore, the patent is invalid, we are unable to find any

consideration for the defendant's promise to pay the money sought to be recovered in this action.

III. If the circuit court had no jurisdiction to pass upon the question of the validity of the patent, none of the exceptions taken on the trial are of the slightest importance. If the court could not lawfully try and determine that question, the plaintiff was entitled to judgment on the pleadings alone, and no error committed on the trial could take from him that right or work the reversal of a judgment in his favor. Hence we are brought to consider the question which occupied most of the attention of the learned counsel on the argument, and which may be thus stated: In an action brought in a state court to recover the price agreed to be paid for a patent right, may the defendant, for the purpose of showing want or failure of consideration, prove that the patent is void because the patentee was not the first inventor of the patented article? Whether such proof be made by showing that the invention had been in use before the patent issued, or by showing that the same is an infringement of a prior patent, the principle must necessarily be the same. In either case the proofs are that the patentee was not the first inventor, and hence that the patent is void.

That the federal courts have exclusive jurisdiction of all actions to annul letters patent, or actions between the owners of adversary patents to determine questions of infringement or priority, is so well settled by numerous adjudications that it is unnecessary to cite the authorities. The principle was fully recognized by this court in *Page v. Dickerson,* 28 Wis., 694.

This is not an action to annul letters patent, neither is it one between adversary patentees to determine their respective rights, but it is an action to recover a sum of money which the defendant agreed to pay the plaintiff, as a royalty, for the exclusive right to manufacture, within certain limits, a patented machine; and the defense is, that the patent is void because the patentee was not the first inventor, and because it is an infringement of an older patent issued to and held and owned by other parties,

and hence, that there was no consideration for the promise to pay the money sought to be recovered.   More briefly stated, the action is for a money demand on contract, and the defense is a want or failure of consideration.   True, the question of the validity of the patent is involved in this defense, but only collaterally.

In *Page v. Dickerson*, Justice COLE uses the following language : " Sometimes the validity of a patent comes collaterally in question in the state courts, where an action is brought in those courts upon a note given for a patent right, and the defense is that there was no consideration for the note.   This was the case in *Rowe v. Blanchard*, 18 Wis., 441; *Head v. Stevens*, 19 Wend., 411; *Cross v. Huntley*, 13 id., 385.   See also the case of *Rich v. Hotchkiss*, 16 Conn., 409.   In such cases, the courts, in order to protect the rights of parties and to determine the binding obligations of contracts, are necessarily compelled to inquire whether there was a failure of consideration of the note because the patent right for which the note was given was not useful for any beneficial purpose."

. If a defendant may show as a defense to an action on his promise to pay money for a patent right, that the invention is not useful for any beneficial purpose named in the patent, why may he not show that the patent is of no value because the patentee was not the first inventor, and hence, that the patent is void?   No difference in principle is perceived in the two cases.   In either case the defense is that there was no consideration for the promise; and the defendant must necessarily be allowed to interpose such defense in any court which has jurisdiction of the action brought against him on his promise.   To deny him this right would result in compelling him to pay money on a mere *nudum pactum*, which is contrary to natural justice.

It may be claimed that it is competent for the defendant to institute an action in the circuit court of the United States to procure a cancellation of his agreement, on the ground that the

patent in question is void, or to compel the plaintiff and the owners of the Marsh patent to interplead and litigate their rights under the respective patents. It is by no means clear that either of these remedies is available to the defendant ; and if available, it does not necessarily follow that the jurisdiction of the state court is thereby defeated. In such case the jurisdiction of the two courts may be concurrent.

It may also be claimed that if the defense here interposed is available in a state court, it must follow that an action to recover damages for making, using or selling a patented article without authority, may, on the same principle, be prosecuted in such court. But no such result necessarily follows. Actions of the latter class are in the nature of penal actions, for the court is authorized by law to give judgment for three times the amount of damages assessed by the jury. U. S. Stats. at Large, vol. 5, p. 123, sec. 14 (ch. 357, Laws of 1836). It was held in *Brigham v. Claflin*, 31 Wis., 607, that the courts of this state will not take jurisdiction of actions to recover penalties imposed by acts of congress.

There are many adjudications which uphold the jurisdiction of the state courts in actions like this, to inquire into the validity of letters patent. We cite a few of them. *Dickinson v. Hall*, 14 Pick., 217 ; *Burrall v. Jewett*, 2 Paige, 134 ; *Saxton v. Dodge*, 57 Barb., 84 (p. 115); *Middlebrook v. Broadbent*, 47 N. Y., 443 (7 Am. R., 457).

The two last cases contain very satisfactory discussions of the subject, and references to many authorities relating thereto.

The only case to which we have been referred, or which, after an extended search, we have been able to find, that lays down a contrary doctrine, is that of *Elmer v. Pennel*, 40 Me., 430. The court were not unanimous, and although the decision was made nearly twenty years since (1855), it seems never to have been followed by any other court. Believing as we do that it is unsound in principle, notwithstanding our high

appreciation of the learning and ability of the court by which it was made, we must hold a different doctrine.

We conclude our observations on this branch of the case by a quotation from the opinion of JOHNSON, J., in *Saxton v. Dodge*, *supra*, which was a case almost precisely like this. The judge says: "There is no force in the plaintiff's objection that this court has no jurisdiction to try the question of want of consideration, because it would necessarily involve an inquiry into the validity of the patent. If the issue was, patent or no patent, or right or no right under it, so that the judgment would determine that question one way or the other, the objection would be well taken. But that is not the issue here. The action is upon the note, and the defense is a total want of consideration. The issue therefore is, consideration or no consideration, of a promissory note. The inquiry into the validity of the patent or the license comes in collaterally only, by way of evidence. In such cases, the court may inquire into the validity of a patent, as well as anything else, for the purpose of determining the question of consideration." Judge PECKHAM asserts the same doctrine in *Middlebrook v. Broadbent*, *supra*, and says that the court has been referred to no case in that state which holds to the contrary.

We are clearly of the opinion, therefore, that the question of the validity of the patent was properly litigated in the circuit court. This conclusion renders it necessary to examine the exceptions taken on behalf of the defendant during the progress of the trial.

IV. One of the claims in the plaintiff's application for his patent is, that by means of an entirely new device, to wit, double belts running with unequal velocity, his machine elevated the grain and delivered it on the binder's table evenly and regularly — a result which, it is claimed, was never before achieved.

The defendant sought to prove, that before the patent was

issued, Messrs. Carpenter and Mills, of Madison, had experimented with the Marsh Harvester, and had succeeded in accomplishing the same result. Mr. Mills gave testimony tending to prove that fact, without objection. Mr. Baker was then called by the defendant, and certain questions were put to him, the answers to which might have tended to prove the same thing; but such questions were objected to by the plaintiff's counsel, and the objections were sustained by the court. The following were the proceedings in that behalf, as stated in the bill of exceptions:

"James E. Baker testified: 'Has been working at machinery for sixteen years, and is a practical machinist, and has been familiar with the Marsh Harvester since it has been in operation, and he set up and run the first one that Sheldon had. In 1868, was with Carpenter and Mills, experimenting with their machine.' *Question:* 'Did you make any change in the elevating process of the Marsh Harvester, and if so, what was it?' Objected to by plaintiff's attorney, and objection sustained by the court, and the defendant's attorney duly excepted. *Question:* 'Did you know of any change or improvement in the elevating process of the Marsh Harvester having been used before the *Rice* patent?' Objected to by the plaintiff's counsel, as not calling for an answer showing *general* use. Objection sustained by the court, and defendant's counsel duly excepted. *Question:* 'Did you know of any change or improvement in the mode of elevating the grain used in the city of Madison, in connection with the Marsh Harvester, previous to the *Rice* patent?' Objected to by the plaintiff's counsel, on the ground that the question is not designed to show *general* practical use. Objection sustained by the court, and the defendant's counsel duly excepted. Witness here voluntarily said, 'Not as I considered practical use, but only as an experiment. I made several experiments.' *Question:* 'In what respect to the elevating process?' Objected to by plaintiff's counsel, and objection sustained by the court, and defendant's counsel duly excepted."

It will be observed that these objections, or some of them, were made on the ground that the questions did not call for answers showing a *general* use of the harvester with which the results claimed for the plaintiff's invention were achieved. But it was not necessary to show a *general* use thereof in order to defeat the plaintiff's patent. By the act of congress of 1836, ch. 357, sec. 6, it is an essential prerequisite to the procuring of a patent, that the article or invention sought to be patented be "not known or used by others" before the invention or discovery of the improvement by the patentee. Sec. 15 of the act makes it a good defense to an action for damages for making, using or selling a patented article, without authority, "that the patentee was not the original and first inventor or discoverer of the thing patented, or of a substantial and material part thereof, claimed as new." It is sufficient, under these statutes, for the purpose of defeating a patent, to show that the invention was "known or used" before the patentee discovered or invented the article or improvement patented, and this without showing a general use thereof. See note to Waterman's Eden on Injunctions, 290 (1) to 290 (4), and cases cited.

The offered testimony, had it been received, might have established a perfect defense to the action, unless that effect would have been destroyed, and the testimony rendered immaterial, by the voluntary statement of the witness that he did not consider the use of the harvester concerning which he was interrogated, a *practical* use, but only an experiment. We do not know the precise sense in which the witness used the term "practical." Manifestly, he did not intend to say that the improvement was not used at all, although, in a certain sense, any use of it, whether by way of experiment or otherwise, would have been a *practical* use. He probably meant that the improvement had not been utilized, but its use was confined to experiments. We find no provisions in the patent laws requiring that a prior use of the thing patented, which will

defeat the patent, must be a *practical* use, or that it must be something more than a mere experiment ; and we think that if the witness, or Carpenter and Mills, so changed the Marsh machine before the plaintiff's invention, that it elevated the grain and delivered it in the receptacle for the binders in the same manner that it is elevated and delivered by the plaintiff's invention, and by the application of the same principles employed by the plaintiff, any use of such altered machine by which those results were obtained, although only by way of experiment, prior to the plaintiff's invention, defeats the patent as effectually as though the improvement had been utilized on every farm in Dane county.

We think the rejection of the offered testimony was a material error, and that, because of such error, there must be a new trial.

V. The instructions asked on behalf of the defendant have not been examined very critically, but we are inclined to think, after perusing them, that the twenty-one instructions which the court gave to the jury, contain the substance of the single instruction which he refused to give. Hence, conceding that the instruction refused is faultless, such refusal is not an error which will reverse the judgment.

VI. The court charged the jury, as requested on behalf of the plaintiff, as follows: "If you find that the defendant was manufacturing, under the contract of September 18, 1871, machines in which the plaintiff was interested, with seats instead of platforms, and that when so manufactured such machines are no infringement of the Marsh Harvester, patented, the defense wholly fails."

Our conclusions that the exclusive right to manufacture machines under the patent was the true consideration for the defendant's promise to pay the money sued for, and that if the patent is invalid, there was no consideration for such promise, have already been stated. Also, that if the patent is valid, the plaintiff is entitled to recover. The issue is then upon the

validity of the patent, and we have seen what is essential to its validity. It is quite immaterial whether the defendant manufactured machines under the contract of September 18, 1871, in which the plaintiff was interested, or not, or whether such machines were manufactured with or without platforms instead of seats, or whether the plaintiff manufactured any machines of any description. The instruction is framed upon an entirely different theory of the case, and ought not to have been given.

VII. The learned circuit judge further instructed the jury, in substance, that if there were patentable improvements in the plaintiff's invention, although he obtained a patent for more than he was entitled to, and the defendant used such patentable portions, the plaintiff could recover.

For reasons already given, we think it quite immaterial whether the defendant did or did not use the plaintiff's invention. If the patent covered too much ground, and yet included a patentable improvement, it is competent for the patentee or his assigns, under certain circumstances, to disclaim for the excess and thus save the patent for such parts as are patentable. Laws of 1837, ch. 45, sec. 7 (5 U. S. Statutes at Large, 193). But until such disclaimer, we understand that the patent is wholly void, and no rights can be successfully asserted under it.

In the present case, we suppose that the patent was issued jointly to the plaintiff as the inventor, and the defendant as assignee of an interest in the invention. It seems to us that the plaintiff should offer to join with the defendant in the execution of a disclaimer, before he can be heard to assert that some validity might be thereby imparted to a patent which, without it, is void. What would be the effect of such an offer or of a disclaimer upon future installments for royalty stipulated for in the agreement between the parties, we do not now determine. See *Reed v. Cutler*, 1 Story's R., 600. The bill of exceptions purports to contain all of the testimony, and there is none tending to show any such disclaimer or offer.

*By the Court.* — The judgment of the circuit court is reversed, and a new trial awarded.