## Rich and another *against* Hotchkiss.

Though the validity of a patent right, when directly adjudicated upon, is within the exclusive jurisdiction of the courts of the *United States,* yet when it comes in question *collaterally,* it is a subject of inquiry in the state courts.

A recital in a covenant, executed by one of the parties, through misapprehension and mistake, will not be regarded, by a court of equity, as conclusive upon such party.

And evidence is admissible, to show that the recital is not true, and that it was inserted in the covenant through misapprehension and mistake.

When a party claims to establish his right merely by estoppel, the instrument by which the estoppel is supported, should be precise, clear and unequivocal, not depending upon doubtful inference.

The taking by *B* of a license from *A,* to use a patent right for a limited time, cannot be considered as an acknowledgment by *B* of a right in *A* beyond the termination of the license.

Where it was stipulated by *A,* in a covenant between him and *B,* that *B* should be entitled to use *A's* patent right three days in a week until the 27th of *December,* and that *A* would not prosecute any action against *B* for any former violation of *A's* right—*provided B* should not run his machine after the 27th of *December,* or by any other machine, infringe *A's* right, during its continuance; it was held, that such proviso, thus introduced to limit *A's* covenants, did not operate as an estoppel against *B,* to prevent him from showing the truth in regard to the validity of the right claimed by *A.*

This was a bill in chancery, praying for a discovery, an account and an injunction.

The bill stated, That the plaintiffs being the proprietors of the exclusive right to use *Woodworth's* patent planing machine in the county of *New-Haven,* and the defendant having

New-Haven,
July, 1844.

Rich
v.
Atwater.

been in the use of a machine for the same purposes, in all its substantial parts similar, in violation of the plaintiffs' right, and being sensible of the injustice thereby done to the plaintiffs, he, on the 6th of *December*, 1842, entered into the following covenant with the plaintiffs : " This agreement made by and between *Ira Atwater* and *Rich & Hotchkiss*, both of *New-Haven*, witnesseth, that whereas the said *Rich & Hotchkiss* are the sole owners of the right to use *Woodworth's* patent planing machine in *New-Haven* county ; and whereas I, the said *Ira Atwater*, am satisfied, that I have no right to use the planing machine now in my possession, and that it is no more than just that the said *Rich & Hotchkiss* should adopt measures to prevent any infringements on their right to such machine ; and in consideration of the said *Rich & Hotchkiss* permitting me to run my machine, three days in a week, from this date until the 27th day of this month, I do hereby give them the right to use *Thompson's* patent planing machine for planing and sticking sash and blind stuff, &c. from the time I became possessed of the right until the expiration of the patent. We, the said *Rich & Hotchkiss*, in consideration of the above, do hereby give to said *Ira Atwater* the right to run his planing machine, three days in each week, from this date until the 27th of this month ; and we further agree not to institute or pursue any action at law against him for damages, for his having infringed heretofore our right to *Woodworth's* patent planing machine : Provided, that said *Ira Atwater* shall not, either himself, his assigns, or any one under him, run his machine after the 27th day of this month, or by any other machine, infringe the said *Woodworth's* patent, during its continuance. *New-Haven, December* 6th, 1842.

Ira Atwater,      L. S.
Rich & Hotchkiss."     L. S.

The bill then stated, that the plaintiffs allowed the defendant to use said machine, for the time mentioned in the covenant, and fully performed the stipulations therein on their part ; that *Woodworth's* patent was renewed and extended for the term of seven years from the 27th of *December*, 1842, and the right to the use of said patent in the county of *New-Haven*, for such extended term, as well as for the unexpired portion of the original term, had been conveyed to, and was vested in, the plaintiffs ; that this was well known to the de-

*New-Haven,*
July, 1844.

Rich
*v.*
Atwater.

fendant, at the time he signed the covenant, which was made with reference thereto ; that the plaintiffs, relying on said agreement, have expended large sums, in erecting buildings and constructing machines to carry on their business ; but that the defendant, soon after the expiration of his license, used, and still is using his machine, in violation of the rights of the plaintiffs.

On the hearing, it was proved and admitted, that said writing was executed, as alleged in the bill ; that the defendant used said machine until the 27th of *December*, 1842, and gave to the plaintiffs the right to run *Thompson's* machine until the expiration of the patent ; and that, on or about the 1st of *May*, 1843, the defendant again put his machine in operation, which he still continues to use.

The defendant offered evidence to prove, that *Woodworth* was not the original inventor of what he claimed in his patent, but that his patent was invalid, the machine being known and in common use long before ; that the machine so used by the defendant was the first invention of *Uri Emmons*, who obtained a patent therefor, which is still subsisting, and which, by agreement between *Emmons* and *Woodworth*, has been transferred to and vested in the latter, or his assignees ; that this patent expired on the 8th of *April*, 1843, after which the defendant and all others had right to use said machine. The defendant also denied the right of the plaintiffs to *Woodworth's* patent, or of any renewal thereof ; claiming, that it expired on the 27th of *December*, 1842, and was never legally renewed. The defendant also claimed to have proved, that the plaintiffs prepared the instrument recited in the bill ; and that the defendant, at the time he executed it, supposed, from previous representations made to him by *Woodworth,* and verily believed, that said patent was a valid patent ; and that the plaintiffs were the sole and exclusive owners of the patent rights both of *Emmons* and *Woodworth*, in the county of *New-Haven ;* and that said instrument was by him executed, relying upon these supposed facts as true.

To the admission of the evidence thus offered by the defendant, the plaintiffs objected ; and the question of its admissibility, as well as of the decree to be passed, was reserved for the consideration of this court.

*Staples* and *Kimberly,* for the plaintiffs, contended, 1. That the suit was within the jurisdiction of the superior court; the object of it not being to avoid the patent or render it inoperative, or to settle conflicting claims under different patents, but to enforce the rights of the plaintiffs under a special agreement between the parties.   Where a right under the patent laws comes in question *collaterally,* the *United States* courts have not *exclusive* jurisdiction.   *Gibson* & al. v. *Woodworth* & al. 8 *Paige,* 132.   *Cross* v. *Huntly,* 13 *Wend.* 132.

2. That the recitals and stipulations contained in the covenant set forth in the bill, are conclusive upon the rights and interests of the parties, so far as they are embraced therein; and the parties are estopped from making averments contrary to such recitals and stipulations.   The exclusive right to the use of the machine in question, is the principal subject matter of the covenant; and this is one, which the parties had a right to settle, by such recitals and stipulations as they thought proper to make.   *Com. Dig. tit.* Estoppel. A 2. E 4. n. c. 1 *Sw. Dig.* 621.   *Stow* & al. v. *Wyse,* 7 *Conn. R.* 214. *Shelton* v. *Alcox,* 11 *Conn. R.* 240. 249.   *Shelley* v. *Wright, Willes,* 9. 11, 12.   *Willoughby* v. *Brook, Cro. Eliz.* 756. *Case* v. *Haight,* 3 *Wend.* 632.   *Jackson* d. *Munroe* v. *Parkhurst,* 9 *Wend.* 209.

3. That the plaintiffs have a right to insist upon a specific performance of this covenant, and that the defendant be restrained from violating it.   2 *Sto. Eq.* 224. & seq.   *Adderley* v. *Dixon,* 1 *Sim. & Stu.* 607.   *The New-York Printing and Dyeing Establishment* v. *Fitch,* 1 *Paige,* 97.   *Martin* v. *Nutkin,* 2 *P. Wms.* 266.   *Arthur* v. *Case,* 1 *Paige,* 447.

4. That the evidence offered by the defendant, was inadmissible.

*Baldwin* (with whom was *R. I. Ingersoll,*) for the defendant, contended, 1. That the superior court had no jurisdiction of the suit.   The question of the validity of a patent pertains to the jurisdiction of the courts of the *United States,* where alone it can be conclusively determined.   *Parsons* v. *Barnard,* 7 *Johns. R.* 144.   *Gibson* v. *Woodworth,* 8 *Paige,* 132. The covenant adds nothing to the right.   If there is a valid patent, an injunction can, at any time, be obtained in the

*United States* circuit court, whose decisions are subject to revision, by the supreme court. If the state courts were to exercise jurisdiction, there would be danger of injustice from conflicting decisions. This should be a sufficient reason for the state court to decline jurisdiction, on an application which appeals to its *discretion*, and which may be made at all times, with equal advantage, in the courts of the *United States.*

2. That if the superior court has jurisdiction, the plaintiffs have not shown a case entitling them to the relief they ask. They have proved simply what the writing on the face of it proves, in connexion with the admission, that the defendant has used *his* machine since *May*, 1843. The plaintiffs have offered no evidence of any renewal of the patent, which, they state, expired on the 27th of *December*, 1842; nor of any new transfer to them. These allegations are expressly *denied*, by the defendant, who offered evidence to *disprove* them. The plaintiffs object to the evidence offered by the defendant, and claim a decree on the writing and admissions of the defendant alone.

3. That the evidence offered by the defendant, was admissible, in any view of the case. The agreement, whatever it imports, is founded on the assumption of *the truth of the facts recited*, which, the case shows, the defendant at the time *believed*, and now offers to prove, were *not true*. The writing signed by the defendant, was *prepared* by the plaintiffs, and signed also by them, who thereby reaffirmed the truth of the statement, which the defendant, on the previous representations of *Woodworth*, believed to be true. The entire value of that which was the consideration of the defendant's agreement, depended on the validity of the patent and the rights of the plaintiffs under it. If there was no patent, the right of using the machine, was, of course, common.

The defendant offered to prove, 1. that *Woodworth*, the patentee, was not the inventor—not that he had not obtained a patent, but that his patent was void: 2. that the defendant's machine did not violate *Woodworth's*, but *Emmons'* patent, which the plaintiffs, if they were the assignees of *Woodworth*, also held, and which expired before the defendant resumed the use of his machine; and that it was in reference to *Emmons'* patent, that the defendant in the writing said, that he was satisfied that he had no right to run *his* ma-

New-Haven,
July, 1844.
————
Rich
v.
Atwater.

chine ; this being not inconsistent with the language of the parties, and being in truth what the defendant intended : 3. that the plaintiffs never had any assignment of *Woodworth's* patent, or of any extension of it : 4. that *Woodworth* died in 1839, and his patent expired in 1842, and was never legally extended : 5. that the defendant executed the writing prepared by the plaintiffs, believing them to be the owners of *Emmons'* patent, as well as of *Woodworth's*, at the time of execution ; and of course, if the language used in the writing imports any thing different from what the defendant now claims, he was led into it, by mistake.

These facts would be admissible in an action at law. *Hayne* & al. v. *Maltby*, 3 *Term R.* 438. *A fortiori* they may be proved as a defence in equity, where the plaintiffs must be prepared to meet any defence showing that the defendant has an equitable right to have the contract set aside. Proof of mistake or surprise, as well as of fraud, going to the entire consideration of the agreement, is not only sufficient to repel the plaintiffs' equity, but to entitle the defendant even to set aside the agreement. *The Marquis of Townshend* v. *Stangroom*, 6 *Ves.* 328. 332. 338. 1 *Madd. Ch.* 405. 2 *Coxe*, 363. *Chitt. Contr.* 297. n. 682. 295. 6. *Fonb.* 119. *Phil. Ev.* 499.

WILLIAMS, Ch. J. The defendant claims, that patents are exclusively within the jurisdiction of the courts of the *United States ;* and therefore, this court will not take jurisdiction of this case. That the validity of patent rights, is a subject peculiarly within the jurisdiction of the courts of the *United States*, is true. But it is equally true, that when they come in question collaterally, their validity must become a subject of inquiry in the state courts. Thus, in a suit upon a note, if it is claimed that the note was given for a patent right, and the patent is invalid, and so there was no consideration for the note, the state courts constantly exercise jurisdiction. *Bliss* v. *Negus*, 8 *Mass. R.* 46. *Cross* v. *Huntly*, 13 *Wend.* 385. But if the plaintiffs are right in their claim, in the present case, the validity of the patent cannot come in question at all. We do not see, therefore, but that before any question of jurisdiction can arise, we are bound to determine whether the evidence offered by the defendant, is admissible or not. The

New-Haven,
July, 1844.

Rich
v.
Atwater.

plaintiffs say, that the validity of the patent cannot be made a question, by this defendant; for he, by his covenants, and accepting a license from the plaintiffs, is estopped from denying their title to this patent, and the validity of the patent itself; and therefore, the testimony offered by the defendant must all be excluded. They say, that the recitals in this instrument, conclude the party as entirely as any covenant. The general rule upon this subject, is fully established. *Shelly* v. *Wright, Willes,* 9. *Carver* v. *Jackson,* 4 *Pet.* 82. *Stow* v. *Wyse,* 7 *Conn. R.* 214. On the other hand, it is claimed, that there is nothing which will prevent the defendant from showing, that there is no consideration for this agreement; and that it is not, therefore, to be regarded in a court of law. And that such is the doctrine of the *English* courts, even at law, was settled in the case of *Hayne* v. *Maltby,* 3 *Term R.* 438. We do not feel called upon to say, how a court of law would treat this instrument. This is an application to a court of equity, to interpose its assistance in favour of the party claiming under this specific instrument, and merely by virtue of it. The defendant admits the execution of the writing, signed and sealed by him; but claims to prove, that it was done under these circumstances: that he had been informed by *Woodworth,* that he had a valid patent, but that the machine was the invention of one *Emmons,* who had procured a patent therefor, then subsisting, and supposed to be valid, the right to which was conferred on the assignees of said *Woodworth.* He further claimed, that the plaintiffs drew the writing in question, and presented it for his signature; and under these circumstances, he executed it.

The question then arises, whether these facts can be given in evidence, upon this application, to show that the party ought not to be concluded by this admission. In *Jackson* d. *Brown* & al. v. *Ayres,* it was said, that a similar agreement was conclusive upon the party, unless he had been deceived or imposed upon. 14 *Johns. R.* 224. In *Jackson* d. *Shaw* v. *Spear,* the court charged the jury, that if *Spear* had acknowledged *Winter's* title, and had made a positive agreement to purchase, with a full knowledge of his rights, and had made no mistake in this respect, he and those holding under him were estopped from denying *Winter's* title; but if they should believe, that *Spear* acted under a mistake, at the time

he made such agreement, he was not concluded; and although this decision was reversed in the supreme court, the law upon this point was recognized by that court, who held, that it was unreasonable to preclude a defendant from showing that the plaintiff had no title, if the acknowledgment of his title was produced by imposition, or made under a misapprehension of the rights of the respective parties.    7 *Wend.* 401.

And in an earlier case in the same state, where the defendant, in a letter, had acknowledged the plaintiff's title, and offered to purchase of him, the court said, that he was not precluded from showing that he grounded his letter on a mistake, or that the fee existed in himself.    *Jackson* d. *Viely* and *Clark* v. *Cuerden,* 2 *Johns. Ca.* 353.

Such have been the decisions in the state of *New-York,* even by courts of law ; but however these decisions might be regarded, by our courts of law, they are peculiarly appropriate to courts of chancery, more especially as they have been recognized, by that distinguished judge, whose opinions have shed so much light upon the path of his successors.    When speaking of the effect of a recital in a deed, in the case of *Stoughton* v. *Lynch,* Chancellor *Kent* says : " I am satisfied that the recital is not only not true in point of fact, but that its insertion arose from misapprehension and mistake, and was not distinctly understood or knowingly assented to, by the plaintiff, at the time he executed the deed.    It would then be very inequitable, and contrary to the policy of this court, which has ample jurisdiction over the correction of mistakes in the most solemn instruments, to permit a recital, originating in mistake, and untrue in fact, to be now set up, as a technical bar to the admission of the truth.    There can be no doubt that the mistake contained in that recital, might be corrected, on a bill filed for that purpose ; and it would be very unfortunate, and deeply to be regretted, if in the mean time, with satisfactory proof of the mistake, we were bound to give force to it, on a question of evidence merely, under the notion of its being a dry forbidding estoppel.    I am not disposed to push the common law doctrine of estoppel to such a rigorous extent." 2 *Johns. Ch. R.* 222.    The facts of that case are not particularly given ; but from the remarks of the chancellor, they would seem to correspond very nearly with the facts in the case before us ; and the views expressed are so consonant

to the principles of justice, as to commend themselves to the *New-Haven,*
*July, 1844.*
approbation of those courts, which are not bound by the de-
cision itself.

Rich
*v.*
Atwater.

It is said indeed, in this case, that this was a settlement of
an existing claim, by parties competent to make it, upon their
own terms. There was no other evidence of a settlement
than what the instrument itself imports ; and if that is to be
so intended, yet a settlement, as well as a covenant, might be
set aside, in a court of chancery, if founded upon a mistake.
If the defendant proves, what he claims he can prove, it is very
evident, that there was a great mistake of both parties, or
gross fraud on the part of the plaintiffs, because this recital
is the declaration of the plaintiffs, as much as of the defendant.
The plaintiffs thus assert, that they are the sole owners of
*Woodworth's* patent, and the defendant, believing it, acknow-
ledges he has no right, and takes a lease from them. He
now says, he can prove that *Woodworth* had no right, and the
plaintiffs have derived no right from him. If this is so, ought
a court of chancery to exclude the evidence, and allow the
plaintiffs to shield themselves in this way ?

It is claimed, however, that the defendant, after exhausting
the benefit of this contract, shall not be at liberty now to re-
ject it, or say that it is void. If it appeared, that the defend-
ant had been enjoying benefit under it, and the plaintiffs been
deprived of rights by it, the aspect of the case would be
greatly altered. *Wallis* v. *Truesdale,* 6 *Pick.* 457. But
what have the plaintiffs lost ? The bill charges, they have
been erecting machines and buildings to carry on the business
more extensively, which have in some measure become use-
less ; of which, however, there was no proof. They have
given nothing but the right to use, for a few days, a machine,
which the defendant offers to show, he had a right to use be-
fore, and to delay, for a few days, a suit against the defend-
ant, which it is not shown they ever intended to commence.
On the other hand, the defendant has gained nothing, except
perhaps the delay of a suit some twenty days ; which suit, if
he is right, must have been utterly vain. This consideration
cannot, therefore, change the aspect of the plaintiffs' case.

But there is another part of the evidence, which, we think,
is admissible.

The recital in the deed, and the acceptance of a license

*New-Haven,*
*July, 1844.*
___
Rich
*v.*
Atwater.

under *Woodworth's* patent, equally import a recognition of the plaintiffs' right ; but they do not fix the time of the continuance of that right.

The defendant takes his license only until the 27th of *December.* By the license, therefore, he acknowledges a right in the plaintiffs only to that time ; and unless the terms of the instrument require a different construction, it would seem fair to suppose, that the termination of the acknowledged right, was limited, by the termination of the time of the license. But here the plaintiffs claim, that the proviso amounts to a covenant by the defendant, on his part, not to run his machine after the 27th of *December*, during the existence of *Woodworth's* patent.

That a proviso may be a qualification of the covenant of one party, or a covenant by the other, is certainly true ; because in indentures, "the law makes each party privy to the speech of the other, and will make such reference thereof as is most fit and reasonable, and will say the words are spoken by him, who could most properly speak them." *Plowd. C.* 134. Or, in the language of more modern cases, covenants shall be construed according to the true intent and meaning of the parties. We are then to inquire, what was the true intent of these parties ? The defendant, having conceded an existing right in the plaintiffs, and negatived any right in himself, consents to take a license from the plaintiffs until the 27th of *December ;* and after granting that license, the plaintiffs covenant, that they will not commence or prosecute any suit at law against him, for damages for a previous infringement of that right ; provided the defendant shall not, after said 27th of *December*, infringe their patent, during its continuance. When a party claims to establish his right, merely by estoppel, the instrument by which the estoppel is supported, should be precise, clear and unequivocal, not depending upon doubtful inference. The taking a license, for a time, of a right, which, it is agreed, must be temporary in the plaintiffs, could hardly be considered as an acknowledgment of a right in the plaintiffs beyond the termination of the license ; and it would seem, that if the party intended to acknowledge the right to extend beyond the expiration of the time he had taken

New-Haven,
July, 1844.

Rich
*v.*
Atwater.

license under it, he would be as explicit as in the acknowledgment of the right itself.

The acceptance of a lease for a certain term, and entering into possession under it, is, says Judge *Bristol*, as much a recognition of title, as though made by the most solemn instrument. 3 *Conn. R.* 47. And yet, it has been holden, that the estoppel continued only during the continuance of the occupation. 3 *Term R.* 441. Why then should this estoppel continue beyond the expiration of the license ?

The proviso, it is said, requires such a construction. There has been much nice discussion upon the word *"provided."* 2 *Co.* 72. *Cro. Eliz.* 242. 385. 486. 560. *Cro. Car.* 128. It is certain, as is said by Judge *Swift*, that there is no word more proper to express a condition than this word "provided ;" and it shall always be so taken, unless it appears from the context to be the intent of the parties that it shall constitute a covenant. 4 *Day*, 326. Where then is that intent, in the case before us ? Not in the license ; for that expired on the 27th of *December*. Not in the recital ; for that is only that the plaintiffs are the sole owners.

In the proviso it does appear, that the plaintiffs covenant not to institute or continue suits against the defendant for causes of action already accrued ; provided the defendant shall not run his machine after the 27th of *December*, until the expiration of *Woodworth's* patent. This is evidence that the plaintiffs intended a further restraint upon the defendant after the 27th of *December*, to be enforced, by the fear of prosecution for the past. This is the penalty to which the defendant assents ; and we can discover no further assent on his part. If he violates this rule, which the plaintiffs have prescribed, he incurs the penalty ; but we can see no reason to say he submits to any thing more.

Let us look a little closer at this instrument. After the plaintiffs have set out their right to this patent, and the defendant has negatived any right in himself, the defendant, in consideration of a right to run the plaintiffs' machine three days in a week, grants to the plaintiffs a right to use *Thompson's* machine ; and they, in consideration of the above, grant to him a right to run their patent three days in a week until the 27th of *December*, and add, " we further agree not to institute or pursue any action at law against him for damages,

*New-Haven,*
*July, 1844.*

Rich
*v.*
Atwater.

for his having infringed heretofore our right to *Woodworth's* patent, &c. provided the said *I. Atwater* shall not, either himself or his assigns, or any one under him, run his machine after the 27th day of *December*, or by any other machine, infringe the said *Woodworth's* patent, during its continuance."

The language purports to be the language of the plaintiffs, not of the defendant. It does not seem to imply any personal obligations upon him, but merely to qualify the extent of the plaintiffs' obligations.

Before this, the defendant has clearly acknowledged no right in the plaintiffs after the 27th of *December ;* and to imply such an acknowledgment from this proviso, introduced, as it seems, by the plaintiffs, to limit their own covenants, and to this add, that the party is estopped from showing the real truth, would, in our opinion, be contrary to the rule that covenants are to be construed according to the intent of the parties, and carrying what Judge *Kent* calls a *dry estoppel*, further than any case within our knowledge.

Without, therefore, going into all the questions discussed in this case, the court are of opinion, that the evidence offered by the defendant, was admissible ; and as the inquiry is also made what decree should be passed, we infer that the evidence, if admitted, would prove the facts offered to be proved.

We therefore advise the superior court, that the evidence should be admitted, and the bill dismissed.

In this opinion the other Judges concurred.

Bill dismissed.