## TEAS v. ALBRIGHT and others.

*(Circuit Court, D. New Jersey.   August 25, 1882.)*

1. JURISDICTION—SUBJECT-MATTER.

    The subject-matter of contracts made in relation to patents, where neither the validity of the patent nor its infringement are concerned in the controversy, does not give the courts of the United States jurisdiction. The rights of the patentee under the patent laws of the United States must be directly and not collaterally brought in issue to give jurisdiction.

2. REMANDING CAUSE—REMAND SUA SPONTE.

    Where, after the removal of a cause wherein the requisite citizenship and the amount in controversy do not exist, and it is found by the pleadings that the subject-matter is one in which a statute of the United States is only incidentally brought in question, the court will of its own motion remand the cause.

In Equity.

*King & Woodruff*, for complainant.

*A. Q. Keasbey & Sons*, of counsel, and *Joseph C. Clayton*, with defendants.

NIXON, D. J. The bill of complaint in this case was originally filed in the court of chancery of New Jersey, and sets forth that the complainant, being the owner of several valuable patents, did, on the first of February, 1876, enter into an agreement with two of the defendant, Cahoone and Albright, to make an assignment of the letters patent to them, in consideration of their paying to the complainant certain royalties from the profits derived from the sale of the goods manufactured under the said inventions.

It alleged that the complainant had never been able to obtain proper access to the books of account of the said defendants, although

the agreement stipulated that during all the time of its continuance their books should be open to his or his agent's inspection, for examination; that he had received five several statements from Cahoone and Albright and their agents since the execution of the agreement, from which it appeared that the complainant had been credited with the total sum of $925.03, and charged with the sum of $787.16, and that the said statements were grossly erroneous and false, both as to the credits and charges; that for some time after the execution of the agreement the said Cahoone and Albright carried on the business of manufacturing the goods described in the said patents under the name of the Cahoone Manufacturing Company ; that afterwards one Samuel E. Tompkins was taken into the business, and it was transacted under the name of "Samuel E. Tompkins, Cahoone & Co.," and that the books of these respective firms contain many items of which it is necessary for the complainant to have information, for the purposes of this suit, and in which the said Tompkins has some kind of interest ; that the accounts between the complainant and Cahoone and Albright are mutual and complicated, arising from the unsettled differences existing between them as to the amount with which the complainant should be charged by the defendants, and from the way in which goods have been manufactured under the said patents—the defendants applying, in some cases, the principles of several patents to a single article of manufacture.

The prayer of the bill is that the defendants may make a full and true discovery and disclosure of and concerning all the accounts, transactions, and matters aforesaid, and that an account may be taken under the direction of the court of all dealings and transactions heretofore had between the parties, concerning the royalties and percentages claimed by the complainant under and by virtue of the said agreement, and that Cahoone and Albright may be charged with the aggregate amounts of said royalties, with lawful interest thereon from the time that the same became due, and that the said sum may be decreed to be paid by the said Cahoone and Albright to the complainant, no decree being asked for against Tompkins.

To the bill, Cahoone and Albright have signed a joint and several answer, and Tompkins a several answer.

The former admit that the agreement between them and the complainant was duly executed, and is in full force; that the patents were assigned to them by the complainant as alleged ; that the patented improvements have been applied by them, in connection with other improvements owned and controlled by them, in the manufact-

ure of harness goods, and that the only consideration for the assignment of the patents was that specified in the agreement. They deny the allegations of the bill, that they have refused to the complainant proper access to their books; that they have not rendered true semi-annual statements of the accounts; that they are indebted to complainant in any sum for royalties due on manufactured goods; and that the accounts between them and the complainant are complicated, or that it will be tedious and difficult to ascertain the amounts due from time to time, under a fair construction of the agreement; although they admit that, in manufacturing the goods for the market, they have necessarily made them in such manner as required the application of the principles of several patents to one article, including patents not embraced within the scope of the agreement.

They further allege that at the time of the execution of the agreement with the complainant they were engaged in earnest litigation with Tompkins concerning the validity of certain patents for improvements in saddle-trees, owned by the said Tompkins, and concerning alleged infringements of said patents, and that in consequence of said litigation, and the rivalry in business between them, great injury resulted to the trade of both parties; and that in October, 1877, an agreement was made between them to cease litigation and unite their business, and since that time said business has been carried on in the name of "Samuel E. Tompkins, Cahoone & Co.," which firm has been entitled to use all of the patents owned by the defendants and by said Tompkins, including the improvements embraced in the patents assigned to them by the complainant; and that they, before the said change in their business, and the new firm, since the change, have applied and used these patents, to a greater or less extent, in manufacturing certain goods, in connection with other improvements covered by other patents owned by them, and that both before and since said change they have carefully kept account of all the goods which embraced any of the improvements covered by the patents assigned by the complainant, although such improvements have been in a great measure superseded and rendered useless by the control of the various patents of Tompkins, with whom they were in litigation at the time of the agreement; and that such books have been, at all reasonable times, open to the inspection of the complainant, and full statements and accounts therefrom have been from time to time furnished to him, and made the basis of frequent payments, under the said agreement.

Their answer also sets up that the firm of Samuel E. Tompkins, Cahoone & Co. is largely engaged in the manufacture of saddlery and saddlery hardware; that its business embraces a large variety of goods which have no relation to the improvements covered by any of the patents referred to in the agreement with the complainant; and that many of said goods which do embrace such improvements also embrace improvements covered by patents, being over 70 in number, owned by said Tompkins and others; that Tompkins has always disputed the validity and value of the patents referred to in said agreement, and has claimed that they were all anticipated by his own patents, and that any goods made under them were infringements of his patents; and that, so far as he was concerned, he was not bound to pay any royalties to the complainant; but that they, (Cahoone and Albright,) desiring to fulfill their agreement fairly, have always caused accounts to be kept of all goods which, on any reasonable construction, could be held to embrace or contain any of the improvements covered by any of the patents assigned by complainant, and both before and since said change in the firm have paid all sums of money due under said agreement, in full; and that if complainant demanded any further payment, or sought to make further examination of said books, it was only because he claimed, without reason, that goods made under the patents of Tompkins were infringements of his patents, assigned to defendants; and they allege that the question of such infringement could not be tried in this suit, involving a subject over which the court had no jurisdicton, and that if anything remained due to complainant under the agreement, he had a full, complete, and adequate remedy at law for the recovery of the same; praying that they might have the same advantage of said defense as if they had demurred upon that ground.

The answer of Tompkins presents substantially the same and no new or different questions.

A replication was duly filed, and the parties proceeded to take their testimony. As this seemed to be turning largely upon the fact of infringement, and matters of construction of different patents, all the defendants joined in a petition to the chancellor for an order to remove the cause into this court, on the ground "that the suit arose under the patent laws of the United States, and that the substantial controversy was one depending upon the construction of said laws, and was exclusively within the cognizance of the courts of the United States, and that the suit was removable under the act of congress of March 3, 1875."

The record being filed, the complainant gave notice of a motion to remand the cause to the state court; but before it came up for decision, under some arrangement between the parties, it was not urged; the testimony was completed, and the case put on the calendar for final hearing.

Before any argument upon the merits, the counsel for the defendants suggested that the pleadings raised the question of jurisdiction, and insisted that the court could not entertain the suit in equity, because the complainant had a plain, adequate, and complete remedy at law. Section 723 of Revised Statutes. The court was asked to dismiss the case upon that ground.

The counsel for the complainant replied that their motion to remand the suit to the state court had never been disposed of, and had been waived only upon the express understanding that all parties should agree to an adjudication here upon the merits, and that if the court was disposed to listen to the technical objection that the form of the action should have been legal, and not equitable, then their motion to remand was renewed, and the judgment of the court invoked upon that question.

It is claimed that the removal was made under the act of March 3, 1875. The fifth section of that act provides that "if in any suit removed from a state court to the circuit court of the United States it shall appear to the satisfaction of said circuit court, at any time after the suit has been removed thereto, that such suit does not really and substantially involve a dispute or controversy properly within its jurisdiction,  *  *  *  the said court shall proceed no further therein, but shall dismiss the suit or remand it to the court from which it was removed, as justice may require."

The court, then, not only has the authority, but is charged with the duty, on its own motion, or at the suggestion of the parties, at any time, to dismiss or remand a suit removed here from a state court whenever it may appear that the dispute or controversy does not come within the provisions of the law.

Looking carefully into the second section of the act, which sets forth the causes that are removable from the state to the federal courts, it is clear that the removal cannot be justified unless the matter in dispute between the parties has arisen "under the laws of the United States."

The character of the controversy must be determined by the record. Turning to that, I find that the suit was commenced by filing a bill in the court of chancery of New Jersey for an account of business

transactions growing out of a written contract between the parties. This contract embraced the transfer or assignment of certain patents from the complainant to the defendants, Cahoone and Albright, and their agreement to pay a specified royalty from the profits of their business on all goods manufactured and sold which embraced the patented improvements. The *gravamen* of the action was the failure of the defendants to perform their personal covenants, and was not to vindicate any rights which had been vested in the complainant under a law of the United States.

All rights that men have in patents are secured to them by federal laws, and all controversies which directly involve the validity of patents, or which are for the recovery of damages and profits for their infringements, are exclusively cognizable in the federal courts. This is elementary knowledge. But when a patentee sells out *all* his interest in the patent, how can any right remain which is secured to him by an act of congress?

Some confusion on this subject has, doubtless, arisen from the fact that the courts of the United States have often exercised jurisdiction over contracts for license to use patented inventions, granting relief to licensors where the licensees have failed to perform their covenants. But it will be found in all such cases that not only has the ownership of the patent been retained by the licensor, but the right of the licensee to use the patent has been conditioned on his performing certain acts or paying certain royalties. *Brooks* v. *Stolley*, 3 McLean, 523, affords a good illustration of a case of this kind. The complainants were the assignees of the Woodworth planing patent for Hamilton county, state of Ohio, and as such, licensed the defendant to run a machine in that county, under a sealed contract in which the licensee's right to use the machine was expressly conditioned on his paying $1.25 for every thousand feet of boards planed, to be paid on Monday of each week; and further, that he should render an account, if required, under oath, and also keep books to which the complainants should have access, and in which all boards planed should be entered.

After complying with the contract for some time, by paying according to its terms, the licensee refused to make any further payments, although he continued to use the machine. The bill was filed for an injunction restraining its further use. Objection was raised to the jurisdiction of the court, but Mr. Justice McLean overruled the objection on the ground that the suit was not to enforce the contract, but to secure to the licensor the rights in the patent

which he had reserved, on the failure of the licensee to perform his convenants; that his only authority for using the machine grew out of the contract; and that the court could not allow him to repudiate the contract and still use the machine. "If," he added, "the object of the bill were merely to enforce a specific execution of the contract, the circuit court of the United States could exercise no jurisdiction in the case."

In *Hartell* v. *Tilghman*, 99 U. S. 555, an intimation is thrown out that Mr. Justice McLean went too far in this case in maintaining the jurisdiction of the courts of the United States, but we may safely concede all that is claimed, and then find ample ground for denying the jurisdiction in the present case.

There is no pretense, in the present suit, that the complainant reserved any interest, absolute or contingent, in the patents which he assigned. He only retained certain royalties in the profits, and the bill is filed to have an account taken of them.

The case cannot be distinguished in principle from those of *Goodyear* v. *Day*, 1 Blatchf. 565, and *Goodyear* v. *Union Rubber Co.* 4 Blatchf. 63. The last-named case was very similar to the one under consideration in all its facts and aspects, except that the defendants were licensees, and not grantees. The owner of a patent granted a license, with covenants that the licensee should pay certain tariffs and keep correct accounts and permit his books to be examined, but there was no express provision that if the convenants were broken the rights granted should revert to the licensor. A bill was filed by the licensor against the licensee, praying for a decree that the covenants should be performed, and for an injunction to prevent the use of the patent under the license until the covenants should be performed. The citizenship of the parties not giving the court jurisdiction, the question was raised and argued whether the action could be maintained.

It was held that the subject-matter did not give a federal court jurisdiction; that the suit was not one to prevent the violation of any right of the licensor secured by any law of the United States, but to prevent the violation of the rights secured by the covenants of the license, and that the court had no jurisdiction of the case. The reasoning of the learned judge seems quite conclusive. "If," says he, "in the use of the thing granted the licensee does not perform his covenants, although there is, by such non-performance, a violation of the rights of the patentee, such violation is not a violation of the rights of the patentee as secured by a law of the United States,

but a violation of his rights as secured by the covenants. He has, by the license or grant, parted with a portion of that which was secured to him by the laws of the United States, and has, in lieu thereof, taken a right secured by a covenant. If a patentee parts with the whole right secured by his patent, either for cash or upon the purchaser's entering into a covenant to pay him a certain sum of money or to do certain other things, the patentee has, after such sale, no right vested in him secured by any act of congress. A suit to enforce the covenant would not be a case arising under a law of the United States. The use of the whole thing sold cannot be a violation of any rights of the patentee secured by the laws of the United States, so long as the deed of sale remains in full force, for he has parted with all such rights. And when a portion of the right is parted with, the rule must be the same, as it respects such portion." See, also, *Blanchard* v. *Sprague*, 1 Cliff. 289, and *Merserole* v. *Union Paper Collar Co.* 6 Blatchf. 356, in which the ground is distinctly taken that the subject-matter of contracts made in relation to patent rights, does not give the courts of the United States jurisdiction in suits to enforce them.

But without dwelling upon these cases, determined in the subordinate courts of the United States, the supreme court, in *Wilson* v. *Sanford*, 10 How. 99, put the question at rest by refusing to entertain jurisdiction of a suit which was brought by the grantor of a license to avoid a license on the ground that the grantee had not complied with the terms of the contract. As neither the citizenship of the parties nor the amount involved in the litigation, gave the court jurisdiction, the only question was whether it was "a case arising under any law of the United States granting or confirming to inventors the exclusive right to their inventions or discoveries."

The court, speaking by Chief Justice Taney, said it was not such a case; that the dispute did not arise under act of congress, nor did the decision depend upon the construction of any law in relation to patents. "It arises," he continues, "out of the contract stated in the bill; and there is no act of congress providing for or regulating contracts of this kind. The rights of the parties depend altogether upon common law and equity principles."

The ground for the removal alleged in the petition to the chancellor was that "the suit arose under the patent laws of the United States, and that the substantial controversy was one depending upon the construction of said laws."

This view was, doubtless, taken because the pleadings and the

evidence tend to reveal that the dispute between the parties arose about the manufacture and sale of certain saddle-trees and gig-saddles—the complainant insisting that they embraced the inventions and improvements of the letters patent which he had assigned to the defendants, and they, in their turn, maintaining they were not subject to the royalties and precentages of the agreement, because they were constructed under other letters patent in which the complainant never had an interest. Questions of infringement and the construction of the claims of patents were thus necessarily involved, and it was assumed that they could only be adjudicated by the courts of the United States.

But the decisions of the courts do not justify any such assumption. Thus, in *Rich* v. *Atwater*, 16 Conn. 409, where a bill was filed for a discovery, account, and an injunction, and where the question of the validity of the Woodworth patent was raised by the pleadings, the supreme court of errors of Connecticut held that though the validity of a patent, when directly involved, was within the exclusive jurisdiction of the federal courts, yet when it came in question collaterally it was the proper subject of inquiry and adjudication in the state courts.

In *Middlebrook* v. *Broadbent*, 47 N. Y. 443, the court of appeals of New York, after a very full argument, decided that a state court had jurisdiction of an action founded upon a contract, although the validity of patent was involved therein.

And in *Merserole* v. *Paper Collar Co.*, *supra*, Judge Blatchford held that a state court had jurisdiction to decree a license under a patent to be void; and if, in the investigation, that court was obliged to inquire collaterally into the novelty and validity of the patent as a consideration for the license, such inquiry would not deprive the state court of jurisdiction, or confer it on a court of the United States.

Being, then, clearly of the opinion that the removal here was without the authority of law, I remand the cause to the state court, without any expression of judgment on the question whether the complainant has mistaken his remedy by proceeding in equity rather than at law. If that question is presented to the learned chancellor of the state, I have no doubt he will give it a patient hearing and a wise determination.

The case is remanded, with costs.

See *Johnson* v. *Johnson*, 13 FED. REP. 193; *Evans* v. *Faxon*, 10 FED. REP. 312; *Beede* v. *Cheeney*, 5 FED. REP. 388; *Dennistown* v. *Draper*, 5 Blatchf. 566; *Stevens* v. *Richardson*, 13 Reporter, 678; *Railroad Co.* v. *Mississippi*, 102 U. S. 135; *Ryan* v. *Young*, 20 Alb. Law J. 79.