Filed Nov. 8, 1893.

No. 16,341.

## Shoemaker v. The South Bend Spark Arrester Company.

Jurisdiction.—*When Presumed.— Collateral Attack.*—Where a court of general or superior jurisdiction, in some view of the case, may have jurisdiction, and it does not affirmatively appear from the record, that the case is one in which jurisdiction does not exist, jurisdiction will be presumed; and a judgment rendered in such a case can not be collaterally attacked.

Same.—*Patent Right.—Injunction.—Interference with Property Rights in Letters Patent.*—State courts have jurisdiction in actions to enjoin interference with the property rights in letters patent, where such interference consists of false and malicious claims of title, threats to collect royalties from plaintiff's customers, and to involve them in litigation for infringements.

Evidence.—*Supreme Court Practice.—Rejected Evidence.—Competency. —Question, How Raised.—Bill of Exceptions.*—In order that the appellate tribunal may decide as to the competency of rejected evidence, it must be brought into the bill of exceptions; for this court will not decide such questions upon the statement of counsel.

Same.—*Relevancy.— Ruling of Postmaster-General.— Letters Patent.*— Where the property rights in letters patent are in dispute, a ruling of the postmaster-general, as to the delivery of mail to the disputants, is not admissible in evidence to rebut an inference of malice, in an action to enjoin interference with property rights in such letters.

Shoemaker *v.* The South Bend Spark Arrester Company.

CHANGE OF VENUE.—*Change upon Change.*—*Special Judge.*—Where a change of venue has been taken from a regular presiding judge, and a special judge has been appointed to try the case, it is not error to refuse a change of venue from such special judge.

From the St. Joseph Circuit Court.

*F. J. L. Meyer,* for appellant.
*L. Hubbard,* for appellee.

HACKNEY, J.—The appellee sued the appellant, in the court below, upon a complaint alleging title to certain letters patent granted by the United States government, derived through a judgment of the St. Joseph Circuit Court theretofore rendered in an action between appellee's assignors and this appellant, wherein the title to said letters patent was in issue and was claimed by such assignors and by this appellant.

Enough of the issues and judgment in that case is pleaded in the complaint herein to show that said action was to quiet the title to said letters patent, and settle the conflicting claims of the parties thereto, and to restrain the appellant from asserting adverse claims thereto. The title was found to be in others, and that this appellant had no interest therein. Upon the title so derived, the appellee sought and secured, in this suit, an injunction against the appellant from representing to the public, and to the customers and agents of the appellee, that he owned said letters patent, or had any interest therein, and from issuing and publishing any demand for royalty or license fees for the use of the invention and improvement covered by such letters, and from threatening litigation with any person who had bought, or might buy or offer to buy, spark arresters covered by such patents, and from advertising that appellee had not the right to collect the price of any such sales, and from questioning appellee's title to such letters.

Shoemaker *v.* The South Bend Spark Arrester Company.

The theory of the complaint is that the false and malicious claims of title by appellant, and threats to collect royalties from appellee's customers, and to involve them in litigation for infringements, was injurious to appellee's business, and materially affected its property rights in said letters patent, and in the value of spark arresters made by it, in that such claims persuaded and deterred persons from buying them, and rendered their invention and investment valueless.

[The appellant attacks the jurisdiction of the St. Joseph Circuit Court to adjudge upon the title to letters patent as pleaded in this complaint, and to enter the decree herein appealed from.

The allegations of the complaint before us do not disclose the character of the claims asserted in the former action by the appellant and by the appellee's assignors, whether they grew out of letters granted to either, or whether they depended upon contracts between the parties under which interests were sold. By reference to the evidence in this case, we find that the complaint in the action involving title alleged an ownership in part by appellees' assignors, and a dispute between this appellant and others named as to the ownership of the remaining interests, the character of the claims to such remaining interests, it was alleged, was unknown, and the allegations did not state the character or source of the claims of the plaintiffs in that case. The evidence in that case is not before us, and we would be slow to look into it to ascertain the jurisdiction of the court, if it were. The finding having been adverse to this appellant his pleadings in that case can not supply the light necessary. The decree in that case does not disclose the character of the claims alleged to be made by any of the parties, and does not afford the means of enlightening us upon this subject.

We are, then, as to the former proceeding, obliged to rest upon such presumptions as the law indulges from the absence of any information upon the subject. The inquiry is suggested by the contention of the appellant that in the former case, the decree in which is pleaded as the source of appellee's title in this case, the St. Joseph Circuit Court had no jurisdiction, and in consequence its decree was void.

It is a well settled rule that where a court of general or superior jurisdiction, in some view of the case, may have jurisdiction, and it does not affirmatively appear, from the record, that the case is one in which jurisdiction does not exist, jurisdiction will be presumed. In view of this rule, we must presume in favor of the jurisdiction of the court in that case if, under any reasonable circumstances, jurisdiction could have existed.

The insistence of the appellant is that no jurisdiction existed to try conflicting claims to letters patent, because, as urged, the rights in such letters are granted under and depend upon the federal laws. To this point are cited *Rich* v. *Hotchkiss*, 16 Conn. 409; *Brooks & Morris* v. *Stolley*, 3 McLean's Rep. 523; *Goodyear* v. *Union India Rubber Co.*, 4 Blatchf. 63; *Duke* v. *Graham*, 19 Fed. Rep. 647; *Campbell* v. *James*, 2 Fed. Rep. 338, and *Elmer* v. *Pennel*, 40 Me. 430.

The effect of the holdings in these cases is, as we understand them, that, where the validity of the patent or infringement is the question directly involved, the United States courts have jurisdiction. But, by an almost unbroken line of decisions, it has been held that even where the validity of the patent is involved, if it arises collaterally, the State courts may have jurisdiction. To this effect are the following cases: *Albright* v. *Teas*, 106 U. S. 613; *Ingalls* v. *Tice*, 14 Fed. Rep. 297; *Middlebrook* v. *Broadbent*, 47 N. Y. 443; *Rich* v. *Hotchkiss, supra; Bur-*

*rall* v. *Jewett*, 2 Paige, 133; *Sherman* v. *Champlain, etc., Co.*, 31 Vt. 162; *Dale, etc., Mfg. Co.* v. *Hyatt*, 125 U. S. 51; *Slemmer's Appeal*, 58 Pa. 155; *Parkhurst* v. *Kinsman*, 2 Halsted's Chan. Rep. 600; *Rice* v. *Garnhart*, 34 Wis. 453; *Saxton* v. *Dodge*, 57 Barb. 84.

The rule which may be deduced from these cases is, that where the cause of action depends primarily upon some contract of the parties, jurisdiction exists in the State courts, although the validity of the patents may arise incidentally.

This rule has been applied to the enforcement of the assignment of letters patent under agreement of the parties and to receivers appointed under State statutes. *Binney* v. *Annan*, 9 Am. Rep. 10; *Fuller, etc., Co.* v. *Bartlett*, 60 Am. Rep. 838.

Such an infinite variety of transactions may arise and find enforcement in the State courts, under the rule stated, that we are not permitted to presume that the title involved in the case pleaded did not depend upon a contract enforceable within the jurisdiction of the St. Joseph Circuit Court. We have been cited to no case, and our researches have discovered none, where the title to letters patent necessarily involved the validity of the patent or the infringement of the rights of the patentee as granted by the laws of the United States. Ownership, legal or equitable, of the letters patent, or of an interest in the invention, does not, in our opinion, necessarily involve the validity of the patent or its infringement, for, presuming the patent to be valid and in no manner issued or used contrary to the laws of the government or the rights of patentees of similar inventions, interests may arise and be enforced under contracts between the parties and within the jurisdiction of the State courts.

As above indicated, the jurisdiction of the St. Joseph Circuit Court, in the present case, is attacked. The as-

sault proceeds from a construction of the complaint that the gist of the action is in the enjoining of mere libels upon the title of the appellee to letters patent. From the premises assumed, the conclusion urged would follow, as held in the following cases: *Whitehead* v. *Kitson*, 119 Mass. 484; *Kidd* v. *Horry*, 28 Fed. Rep. 773; *Life Ass'n* v. *Boogher*, 3 Mo. App. 173; *Baltimore Car Wheel Co.* v. *Bemis*, 29 Fed. Rep. 95; *Mauger* v. *Dick*, 55 How. Pr. 132; *Singer Mfg. Co.* v. *Domestic, etc., Co.*, 49 Ga. 70.

However, we do not concur in the construction of the complaint insisted upon by the appellant.

The complaint before us involves more than libel of title, it charges the false and malicious destruction of the appellee's property rights in injuring its business, deterring others from dealing with it, and rendering valueless its inventions and improvements, its investments and manufactures. It is more than a mere libel not interfering with property rights. The distinction between the two classes of cases is made and enforced by Mr. Justice Blodgett, in *Emack* v. *Kane*, 34 Fed. Rep. 46.

In that case, in speaking of *Kidd* v. *Horry*, *supra*, it was said: "The principle of this case, concisely stated, is that a court of equity has no jurisdiction to restrain the publication of a libel or slander. But it seems to me the case now under consideration is fairly different and distinguishable from the cases relied upon by the defendants in what seems to me a material and vital feature. In *Kidd* v. *Horry*, the owner of a patent sought the interference of a court of equity to restrain the defendants from publishing and putting in circulation statements challenging the validity of his patent, and of his title thereto, on the ground that such publications were libelous attacks upon his property. Here the complaint seeks to restrain the defendants from mak-

ing threats intended to intimidate the complainant's customers under the pretext that complainant's goods infringe a patent owned or controlled by the defendants, and threats that if such customers deal in complainant's goods, they will subject themselves to a suit for such infringement; the bill charging, and the proof showing, that these charges of infringment are not made in good faith, but with a malicious intent to injure and destroy the complainant's business.

"While it may be that the owner of a patent can not invoke the aid of a court of equity to prevent another person from publishing statements denying the validity of such patent by circulars to the trade, or otherwise, yet, if the owner of a patent, instead of resorting to the courts to obtain redress for alleged infringements of his patent, threatens all who deal in the goods of a competitor with suits for infringement, thereby intimidating such customers from dealing with such competitor, and destroying his competitor's business, it would seem to make a widely different case from *Kidd* v. *Horry*, and that such acts of intimidation should fall within the preventive reach of a court of equity.

"It may not be libelous for the owner of a patent to charge that an article made by another manufacturer infringes his patent; and notice of an alleged infringement may, if given in good faith, be a considerate and kind act on the part of the owner of the patent; but the *gravamen* of this case is the attempted intimidation by defendant of complainant's customers by threatening them with suits which defendants did not intend to prosecute; and this feature was not involved in *Kidd* v. *Horry*.

"I can not believe that a man is remediless against persistent and continued attacks upon his business, and property rights in his business, such as have been per-

petrated by these defendants against the complainant, as shown by the proofs in this case.

"It shocks my sense of justice to say that a court of equity can not restrain systematic and methodical outrages like this, by one man upon another's property rights. If a court of equity can not restrain an attack like this upon a man's business, then the party is certainly remediless, because an action at law in most cases would do no good, and ruin would be accomplished before an adjudication would be reached. * * * Redress for mere personal slander or libel may perhaps properly be left to the courts of law, because no falsehood, however gross and malicious, can wholly destroy a man's reputation with those who know him; but statements and charges intended to frighten away a man's customers, and intimidate them from dealing with him, may wholly break up and ruin him financially, with no adequate remedy if a court of equity can not afford protection by its restraining writ."

Little has been said by the learned judge in that case, which is not fully applicable in this case, and here we have an element not included in that case, namely, the insolvency of the appellant, whereby an action at law would be wholly inadequate.

In the case of the *Life Ass'n* v. *Boogher, supra*, it was held that insolvency did not enlist the aid of the court of equity, but we are disinclined to accept that case as authority. It is not only out of line with the holdings of this court upon that question, but it holds that the constitutional guarantee of the freedom of the press and of speech is a protection to one against equitable interference in publishing false and injurious statements. In neither of these positions can we believe it sound.

It is urged that the lower court erred in refusing a change of the venue in the cause from the special judge

Shoemaker *v.* The South Bend Spark Arrester Company.

before whom it was set by the regular judge, a change having been taken from such regular judge. The affidavit in support of the motion so denied did not set out any statutory cause for such change, but stated the employment of such special judge as counsel for some of the parties in the former proceeding involving the question of the ownership of the patents. While a breach of propriety to have accepted the special appointment under such circumstances, we are not enabled to say that the appellant was harmed by the denial of his application. If the affidavit had stated a statutory cause for the change, it should have been denied under the rule that but one change is allowable. R. S. 1881, section 413.

Certainly the special affidavit did not make a stronger showing than one including the statutory causes.

Under the claim of rebutting the inference of malice in publishing the circulars complained of, and to prove the truth of the statements in such circulars, the appellant sought to prove a ruling of the postmaster-general upon which the local postmaster was ordered to deliver to the appellant mail addressed to the appellee. We are unable to observe the force of either claim in support of the offered evidence. The postmaster-general had no authority to decide between the conflicting claims of ownership to the patent, and the effect of any holding by that officer could be no justification or excuse for publishing an injurious claim of title and false demand for royalties, when the proper courts were open to him, and when, in one of such courts, an adverse decision had already been rendered.

There had been no effort to disprove the truth of appellant's statements of the postmaster-general's ruling; the ruling was used in the statements manifestly for the purpose of lending force to the appellant's claim of ownership, but the ruling could give no real strength to his

claim, and could furnish no such advice to the appellant as would excuse the publications.

The appellant complains of the exclusion of a deed of assignment to him by one Rose, offered in defense of his claim of title adverse to that asserted by the appellee. The deed is not in the record, and we have no means of judging of its relevancy. If it antedated the judgment in the former case, the issue arising upon it was there determined adversely to him, and he could not again assert it in this action, thereby collaterally attacking the former decree. Nor can we say that a decree in disregard of such deed was unconscionable, as counsel insists. We do not know that the former decree was in disregard of the deed. It may have been found to have been a forgery, or to have lapsed for nonpayment of the consideration, or set aside as procured by fraud. To permit an inquiry as to the justice of the former decree in its effect upon the assignment would introduce a collateral inquiry, one that appellant was bound to make upon appeal, or by other direct proceeding. It is urged that defending the former suit as a poor person, appellant was assigned unskilled counsel, by whose mistake the deed was not introduced in evidence, and that his interests were thereby unjustly defeated. In the absence of fraud, the appellant was bound by the decree, and, for fraud, his remedy is not against the appellee by collateral inquiry.

It is further complained that the trial court erred in excluding as evidence a transcript of certain proceedings in the circuit court of the United States, for the district of Indiana, in support of his assertion of former adjudication of title in his favor. The bill of exceptions states the offer of a transcript, but the same is not made part of the bill of exceptions, and we are deprived of any means of judging of its relevancy. We are not at liberty

to decide such questions upon the statement of counsel to this court, or to the lower court, as to the contents of a transcript or other document.

The questions already passed upon render it unnecessary to inquire whether the decree was contrary to law.

The record discloses no error for which the decree of the lower court should be reversed, and the same is, therefore, affirmed.

HOWARD, J., did not participate in this case.

